[Crim. No. 2151. Third Dist. Dec. 1, 1949.]

THE PEOPLE, Respondent, v. JOHN McDONNEL, Appellant.

 

Chester Monette for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was charged with an assault with a deadly weapon, to wit, a loaded revolver, with intent to kill Tommy Young. He was tried with a jury and convicted of the lesser offense of assault with a deadly weapon. From the judgment which was rendered accordingly this appeal was perfected.

The appellant contends that the verdict and judgment are not supported by the evidence; that he went with two companions to a Negro Christmas night celebration to try to identify a Negro who his companion Albro said had previously beaten him; that Tommy Young was the aggressor in an affray which ensued, and that he (the defendant) shot him in what he believed to be necessary self-defense to prevent imminent bodily harm. It is also insisted the court erred in giving to the jury and in refusing to give certain instructions.

Mr. and Mrs. Burks were entertaining some friends in their rooms in the upper story of an apartment house in Eureka, on Christmas night. The hosts and guests were Negroes. The defendant and his companions were white people. The defendant was acquainted with Mr. Burks, having previously worked with him in a Eureka foundry. Upon that Christmas night the defendant met his friend Albro, who was then disheveled and intoxicated. His clothes were torn and muddy. He told the defendant he had been beaten by a Negro, and asked the defendant to go with him to the Burks' Christmas celebration to see if they could find the man who assaulted him. The defendant consented to do so, and arming himself with his revolver they met and persuaded another companion by the name of Van Cleve to accompany them. The three men pro-

ceeded to the apartment house where the Burks' party was being held. They arrived shortly before midnight, and entering the front door they climbed a flight of 26 stairs to the second story upon which the Burks' rooms were located. They rapped at the door, and when Mr. Burks appeared the defendant told him his friend Albro had been beaten by a Negro, and said they wanted to see if that man was there. Burks told him he didn't know anything about the affair; that they were having a little Christmas party, and did not want any trouble. He requested the defendant and his companions to leave them alone and to go away. But when the defendant and his associates insisted on seeing the Negro guests, Burks called them from the room. Ten or a dozen of them came trooping out into the hallway and stood in a group upon the landing at the head of the stairway. Tommy Young was among them. The defendant, evidently being surprised at the large number of guests who came swarming out of the room, decided that "discretion was the better part of valor," and saying "We don't want any trouble, let's go," hastily ran down the stairs to a safe place near the bottom, where he stopped and turned around. The defendant claimed that Young shoved him downstairs, but several witnesses denied that statement. The defendant asserted that Young followed him part way down the stairway, and that he threatened him with bodily harm. But that statement was denied by Young and several other witnesses. Young testified that he put his hand on the shoulder of Van Cleve, a very tall and large man, as he stood at the head of the stairway, and told him they were having a Christmas party and didn't want any trouble, and that he asked the defendant and his companions to go away and to leave them alone. Van Cleve claimed that Young shoved him down the stairway. In any event Van Cleve and Albro proceeded to follow the defendant down the stairway. Young stood at the head of the stairway with one leg thrown over the bannister. None of the Negroes were armed, and none of them threatened the defendant or his companions with harm. There was no demonstration or effort on the part of Young or the other Negroes to follow them downstairs.

Suddenly, without warning, the defendant, who stood in a safe place near the bottom of the stairs, drew his revolver and shot Mr. Young in the leg. The defendant and his companions immediately fled through the front door and disappeared. Young was seriously injured and was taken to a hospital for medical treatment. The defendant was subse-

quently arrested and charged with the crime as previously stated.

If we assume that the foregoing circumstances constituted an affray, it was the sole province of the jury to determine who the aggressor was in that affray.

We are satisfied the evidence amply supports the verdict and judgment convicting the defendant of the lesser offense of an assault with a deadly weapon. There appears to have been no sufficient provocation or justification for the shooting of Mr. Young or any other person involved in that affair. The defendant deliberately armed himself with his revolver and went with two companions to that Christmas party, seeking some unknown Negro who Albro said had previously assaulted him. The Negro guests were called from the reception room at the request of the defendant. None of the Negroes were armed, and none of them attempted to attack the defendant or his companions, nor did they threaten to do so. They were not pursuing the defendant down the stairway. Mr. Young stationed himself at the top of the stairway where he stood unarmed, with his leg thrown over the bannister. The defendant occupied a safe position at the bottom of the stairway near the front door, through which he could have easily escaped to absolute safety if he had been threatened with bodily harm. There is an abundance of evidence that no such harm was threatened. The circumstances would not warrant the defendant in believing as a reasonable man that he was then in imminent danger of receiving great bodily harm. **[3]** The question of whether the defendant, as a reasonable man, was justified in believing, under the circumstances of this case, that he was then threatened with imminent danger so as to justify the use of a deadly weapon in necessary self-defense is a problem for the sole determination of the jury. (*People* v. *Zuckerman*, 56 Cal.App.2d 366, 374 [132 P.2d 545].) The implied finding of the jury upon that issue was adverse to the contention of the defendant. With that conclusion we may not interfere, in view of the record in this case. Certainly Young was not the aggressor in that alleged affray between himself and the defendant.

The court properly instructed the jury that a person who seeks or instigates a quarrel with another person must, in good faith, first desist or retire from the affray, before he will be justified in the use of a deadly weapon in self-defense, or in using force and violence against his adversary. (*People* v. *Holt*, 25 Cal.2d 59, 66 [153 P.2d 21].) Moreover, the court

gave to the jury the following instruction favorable to the defendant upon that identical principle:

"It is lawful for a person who is being assaulted and who has reasonable grounds for believing that bodily injury is about to be inflicted upon him to stand his ground and defend himself from such attack; and in so doing, he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person in the same or similar circumstances to be necessary to prevent the injury which appears to be imminent. A person who has been attacked and who is exercising his right of lawful self-defense is not required to retreat and he not only may stand his ground and defend himself against the attack but may also pursue his assailant until he has secured himself from danger, if that course appears to him and would appear to a reasonable person in the same situation to be reasonably and apparently necessary; and this is his right, even though he might have gained safety by withdrawing from the scene."

█ It did not constitute reversible error for the court to refuse to give defendant's proposed instruction to the effect that he had testified in his own behalf and that his credibility and the weight of his evidence should be determined by the jury in the same manner applicable to any other witness. The court elsewhere fully charged the jury with respect to the rule to be followed in determining the credibility and weight of the testimony of each and all witnesses alike. It has been repeatedly held to be improper for the court to single out a particular witness and to charge the jury how his evidence should be considered. (*People* v. *Barnett*, 99 Cal.App. 409, 416 [278 P. 885]; *People* v. *Young*, 88 Cal.App. 2d 129, 134 [198 P.2d 384]; *People* v. *Jeans*, 79 Cal.App. 464 [249 P. 1089]; *People* v. *Jackson*, 63 Cal.App.2d 586, 595 [147 P.2d 94]; 8 Cal.Jur. § 394, p. 356.) That instruction was properly rejected.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.