[Crim. No. 12116. First Dist., Div. One. Aug. 23, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ISRAEL WHITTAKER, Defendant and Appellant.

304

COUNSEL

John B. Mitchell, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Roger E. Venturi and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Israel Whittaker was convicted by a jury's verdicts of three counts of first degree (armed) robbery. (Pen. Code, §§ 211, 211a.) As to each of the counts the jury found that in the commission of the offense he used a firearm. (See Pen. Code, § 12022.5.) Further, as to one of the counts, they found that he, "with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, . . ." (See Pen. Code, § 213.) The appeal is from the judgment which was entered on the verdicts.

We have concluded that the judgment must be affirmed. Our reasons follow.

I. ██ Whittaker's first contention is expressed as: "The evidence was insufficient, as a matter of law, to support a finding of *intentional infliction*" (italics added) of great bodily injury upon one of the robbery victims, Ralph Giannini.

██ We, a reviewing court, must view the evidence in a light most favorable to the People and presume in favor of the jury's finding, the existence of every fact that it could reasonably deduce from the evidence. (*People* v. *Mosher*, 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) Reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding; to sustain such a reversal "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support" the questioned finding. (*People* v. *Redmond*, 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

██ We find the following evidence relating to the robbery of Giannini, a liquor store clerk.

While pretending to purchase a bottle of wine, Whittaker handed Giannini a $10 bill. As the change was being counted out Whittaker pulled out a handgun and said, "No, all of it." Although asked to place the money in "the bag," the clerk instead placed it on the counter. He then, at Whittaker's direction, lifted the change box from the cash register. The robber, holding the gun in his hand, "looked in the drawer and saw that there was nothing there." As the clerk replaced the change box the gun was fired, shattering Giannini's left wrist. The gun was later recovered from Whittaker's automobile. It required 4¼ to 10 pounds of pressure to activate the trigger, making it unlikely that the weapon was "accidentally" fired. In addition, bearing heavily on the question of intentional infliction of great bodily injury, is the reasonably drawn in-

ference that Whittaker, armed with a loaded revolver, pointed it at Giannini and pulled the trigger.

The foregoing is substantial evidence supportive of the jury's questioned finding of "intentional infliction" of great bodily injury. It is of no consequence that they might also have reached a contrary conclusion.

II. It is charged that "the court erred in refusing to give appellant's requested *Sears* instruction."

The rejected instruction follows:

"In determining whether the specific intent to inflict great bodily injury has been proven beyond a reasonable doubt, you may consider on behalf of the defense, the following evidence:

"1. The testimony of Ralph Giannini that the gun was resting on the counter when it went off;

"2. The testimony of Ralph Giannini that he did nothing to provoke the defendant;

"3. The testimony of Ralph Giannini that he said nothing to provoke the defendant;

"4. The testimony of Ralph Giannini that the defendant said nothing immediately prior to the gun going off;

"5. The testimony of Ralph Giannini that the bullet shattered the wine bottle on the counter before striking Mr. Giannini;

"6. The testimony of Ralph Giannini that the defendant's conduct after the gun was exposed was consistent with a desire to go unnoticed by others;

"[7]. Any other evidence that tends to establish a reasonable doubt as to the issue of specific intent to inflict great bodily injury."

Whittaker argues that the trial court was obliged to so instruct the jury under the force of *People* v. *Sears*, 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847].

We observe nothing in *Sears* that compels such a conclusion.

The *Sears* court (p. 190) stated that earlier cases had "often approved instructions pointing out the relevance of certain *kinds of evidence* to a specific issue. . . ." (Italics added.) As an illustration it was said: "Instructions generally pointing out the relationship of motive and lack of motive to guilt and innocence have long been approved in this state," and

that "no reason appears why a defendant upon request should not be entitled to a specific instruction pointing out that lack of motive is a circumstance which may be considered by the jury in determining the issue of premeditation and deliberation. . . ."

In the instant case it would obviously have been proper, under *Sears*, to instruct the jury that in determining the question of "intent to inflict great bodily injury," they might consider evidence of Whittaker's conduct at the time of the robbery. Just as obviously, it would have been improper to single out, or (as here) to paraphrase, certain testimony of a witness on the subject, for the jury's special consideration. Such an instruction would do violence to the time-honored rule that it is " 'improper for the court to single out a particular witness and to charge the jury how his evidence should be considered. . . .' " (*People* v. *Lyons*, 50 Cal.2d 245, 271 [324 P.2d 556]; *People* v. *McDonnel*, 94 Cal.App. 2d 885, 889 [211 P.2d 910].)

Whittaker misconstrues *Sears* as approving the instruction at issue in that case, the form of which he has closely followed. Instead the *Sears* court found that instruction "defective in form" while stating that upon a retrial *"appropriate instructions* [italics added], if they are requested" should be given. Such "appropriate instructions" would, as indicated by the court, point out "the relevance of *certain kinds of evidence*," to the concept of proof beyond a reasonable doubt. (Italics added.) The "certain kinds" of evidence referred to, patently does not refer to selected testimony of particular witnesses.

It is significant, also, that the conviction in *Sears* was reversed for reasons unrelated to the instruction of that case.

The vice of the instruction sought by Whittaker is well illustrated by its first specification. The jury would have been told, in language chosen by Whittaker and found nowhere in the record, to consider in determining the existence of reasonable doubt—"1. The testimony of Ralph Giannini that the gun was resting on the counter when it went off."

The basis of Whittaker's self-serving paraphrasing appears to be Giannini's testimony that when the robber first produced the gun, "it was sitting in his hand on top of the counter." But Giannini further testified that after he placed the cash drawer's contents on the counter the robber moved, and that: "I do not know if it was still resting on the counter or not. I did not take notice of that." At the time the gun "went off," Giannini

did not see it; he testified that he "was concentrating on pulling the money out of the drawer at the time."

The trial court did not err in rejecting the proffered instruction.

III. No merit is seen in Whittaker's contention that his photographic identification by a witness was impermissibly suggestive.

The trial court, on substantial evidence (see *People* v. *Hawkins*, 7 Cal. App.3d 117, 122 [86 Cal.Rptr. 428]), concluded that the identification was *not* "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (See *Simmons* v. *United States*, 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) From our review of the record we reach the same conclusion. There was no error here.

■ Nor is there merit in the companion contention that once Whittaker was in custody, the officers were limited to use of a corporeal lineup, and that the showing of photographs to witnesses was no longer permitted. That this is not the rule is established by *People* v. *Dontanville*, 10 Cal. App.3d 783, 791 [89 Cal.Rptr. 172], and *People* v. *Padgitt*, 264 Cal. App.2d 443, 449 [70 Cal.Rptr. 345] [cert. den., 396 U.S. 892 (24 L.Ed.2d 168, 90 S.Ct. 186)]; in the latter case photographs of the jailed accused were shown to a witness the day before his preliminary examination.

IV. ■ A witness to the earliest of the three robberies had described the robber's automobile as a "Malibu." The remaining robberies took place a few days later. Witnesses reported the perpetrator of one of the latter robberies to have been driving a "Javelin." When arrested, Whittaker was driving a "Javelin" in which was found a rental receipt, in Whittaker's name, tending to establish that the car had been rented the day following the first robbery. Over objection the receipt was admitted in evidence. Whittaker claims "hearsay error." No authority is offered by him on the point.

The contention is without merit. The rental receipt may not be deemed hearsay, for it was not offered or admitted to prove the truth of the matter stated thereon. (See Evid. Code, § 1200.) Instead it established that Whittaker *had in his possession* a paper indicating that he had rented the automobile a day after the first of the charged robberies. It was relevant circumstantial evidence, since it had a "tendency in reason to prove . . . any disputed fact" (see Evid. Code, § 210), i.e., Whittaker's guilt of the subject robberies.

V. Whittaker finally contends that two of the robberies, of separate liquor stores on the same day, must for purposes of the added penalty of Penal Code section 12022.5 be deemed to have been committed pursuant to "a single course of conduct." So considered, he argues that Penal Code section 12022.5, by virtue of Penal Code section 654, may be applied to but one of those robbery convictions.

The contention is answered by the case of *People* v. *Massie,* 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869]. *Massie* had argued that three separate robberies, occurring over a period of three hours, constituted but "a single course of conduct." The court stated: "We cannot hold that Massie's commission of a series of robberies constituted 'a single course of conduct.' A defendant may not bootstrap himself into section 654 by claiming that a series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composes an 'indivisible transaction.' . . ."

We observe further, that the clear purpose of Penal Code section 12022.5 is to discourage violently inclined criminals from using firearms in the commission of their crimes. The rule contended for by Whittaker, permitting use of a firearm in all but the first of a series of unrelated crimes of the same day without additional section 12022.5 penalty, would frustrate the legislative objective. Such a result should be avoided by the courts. (*People* v. *Superior Court (Smith),* 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].)

The judgment is affirmed.

Molinari, P. J., concurred.

·Appellant's petition for a hearing by the Supreme Court was denied October 17, 1974.