[Crim. No. 23902. Sept. 3, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD L. MAKI, Defendant and Appellant.

**COUNSEL**

Robert A. Karpuk, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, A. Wells Petersen, John W. Carney, Keith I. Motley and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**LUCAS, J.**—We granted hearing in this case to clarify the standards for admitting documentary evidence at probation and parole revocation hearings. We will conclude that documentary hearsay evidence which does not fall within an exception to the hearsay rule may be admitted if there are sufficient indicia of reliability regarding the proffered material, and will affirm the trial court judgment revoking probation.

In 1981, following a negotiated plea to two counts of fraudulently issuing checks with insufficient funds (Pen. Code, § 476a), the court placed defendant Donald L. Maki on probation for three years. Among the terms and conditions of his probation was the standard requirement that defendant obtain written permission from his probation officer before leaving the County of San Diego or the State of California. Two years later, probation revocation proceedings were initiated based on four alleged violations of probation by defendant. The court rejected three of the alleged violations, but found that defendant had violated probation by traveling to Chicago, Illinois, without his probation officer's written consent.

During the hearing the court, over defendant's objections, admitted into evidence copies[1] of a car rental invoice and a hotel receipt which had been seized from defendant's home during his arrest on unrelated charges. The car rental invoice bore defendant's name in three places and indicated rental of a Hertz car at Chicago's O'Hare Airport on January 27, 1983, with return due two days later. The hotel receipt was dated January 28, 1983, and indicated payment for services at the Hyatt Regency O'Hare in Chicago. This latter document was unsigned but had upon it the name "Maki." The court admitted into evidence two probation reports signed by defendant and presented by Pisor. Both Pisor and the judge compared the signatures on the reports and two signatures on the invoice and concluded that they were made by the same person. (See Evid. Code, §§ 1416 and 1417; all subsequent references are to this code unless otherwise indicated.)

---

[1]One of the arresting officers had given the copies of the documents to defendant's probation officer, Michael Pisor. Defendant made no objection to the use of copies of the original documents.

Based on the two documents obtained during the arrest, and Pisor's testimony and his statement that he had not granted defendant permission for a trip to Chicago, the court found defendant to have violated the requirement that he obtain consent to leave the area, revoked probation, and sentenced defendant to two years on each count, to be served concurrently.[2] Defendant appeals, arguing that the trial court improperly revoked his probation based upon inadmissible and unreliable hearsay.

## DISCUSSION

### I. *Exceptions to the Hearsay Rule*

Hearing in this case was granted to consider the application of *People* v. *Winson* (1981) 29 Cal.3d 711 [175 Cal.Rptr. 621, 631 P.2d 55], to a case in which the evidence relied upon was documentary. In *Winson,* we held that a transcript of preliminary hearing testimony is "not a proper substitute for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause." (*Id.,* at pp. 713-714.) We emphasized, however, that the right of confrontation upon which we rested our holding was not absolute and where " 'appropriate,' witnesses may give evidence by document, affidavit or deposition (*Gagnon* [v. *Scarpelli* (1973) 411 U.S. 778,] 782, fn. 5 [36 L.Ed.2d at p. 662]; *Morrissey* [v. *Brewer* (1972) 408 U.S. 471,] 478 [33 L.Ed.2d at pp. 497-498] [the parolee 'may bring letters, documents, or individuals who can give relevant information to the hearing officer']; *In re Bye* [(1974) 12 Cal.3d 96,] 110, fn. 15)." (*Id.,* at p. 719.)

Before reaching the issue of the application of *Winson* to this case, we first consider whether the evidence here admitted was in fact properly considered under pertinent exceptions to the hearsay rule. If it was, then there is no need to inquire as to whether and what flexible standards may be applied to the use of otherwise inadmissible documentary evidence in revocation proceedings.

Defense counsel objected to the introduction of the invoice and receipt on the grounds that it had not been shown that they were in fact from Chicago, or that the invoice had been signed by defendant outside of San Diego. Counsel also stressed that it had not been established where the police had actually seized the documents. He disputed the court's conclusion that they had been found on defendant's person or in his possession which the court

---

[2]Later, when defendant was sentenced to three years in another matter, the court modified the sentences imposed in this case to provide for a consecutive subordinate sentence of eight months (one-third midterm) plus a two-year concurrent midterm. (See Pen. Code, § 1170.1; *People* v. *Bozeman* (1984) 152 Cal.App.3d 504, 506-507 [199 Cal.Rptr. 343].)

based on their listing on defendant's property slip when he was arrested. The court overruled the objection and stated it could reasonably draw the conclusion from the documents that a violation had occurred. If the documents were admissible this inference was reasonable and, since revocation of probation requires a finding based on preponderance of the evidence, the court's ruling should be affirmed.

There are, however, significant questions regarding the admissibility of the documents under usual exceptions to the rule against hearsay. The people made no attempt to admit them as business records. Section 1271 provides that a writing is not made inadmissible by the hearsay rule, and may be used to prove an act, condition or event if "(a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." There was no evidence presented to meet the cited criteria and the documents therefore do not qualify as admissible business records.

In urging affirmance of the trial court's ruling, the prosecution contends that the records, particularly the invoice, were properly admitted as "adoptive admissions." Section 1221 states that "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." Here, the court after comparison concluded, as it was entitled to do pursuant to section 1417, that the signature on the invoice was by the defendant. The prosecution asserts that the exception for adoptive admissions therefore applies because the signature on the invoice sufficiently served to authenticate and "adopt" the contents of the document.

The objections raised here put into question whether the documents were what they purported to be. (See *Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310, 318 [118 Cal.Rptr. 596].) The mere fact of defendant's signature on the invoice did not constitute authentication because there was no testimony regarding the preparation of the document, or its purpose. The signature alone demonstrated nothing about the authenticity of the contents.

It is true that under some circumstances the invoice may have been admissible. In *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42-43 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], we explained that "Since invoices, bills, and receipts for repairs are hearsay, they are inadmissible independently to prove that liability for the

repairs was incurred, that payment was made, or that the charges were reasonable. [Citations.] If, however, a party testifies that he incurred or discharged a liability for repairs, any of these documents may be admitted for the limited purpose of corroborating his testimony [citations] . . . ." However, to prove "adoption" of a hearsay statement sufficient to make it admissible under section 1221, not merely as corroboration, it must be shown "that the party to an action against whom a declarant's hearsay statement is offered as an adoptive admission, (1) had *knowledge* of the contents of *declarant's* statement, and (2) having such knowledge, has, by *words* or *other conduct,* manifested his adoption or his belief in its truth." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 1.1, pp. 19-20, italics in original.) Defendant's signature thus would constitute an adoptive admission if it were shown that he had read over the document and signed it after doing so. (*People* v. *Pic'l* (1981) 114 Cal.App.3d 824, 859 [171 Cal.Rptr. 106]; see *Zenith Radio Corp.* v. *Matsushita Elec. Ind. Co.* (E.D.Pa. 1980) 505 F.Supp. 1190, 1245.) This prerequisite for introduction of such evidence may be provided by testimony of a person describing the circumstances surrounding the signing of the document. (See, e.g., *United States* v. *Johnson* (8th Cir. 1976) 529 F.2d 581, 584-585; cf. *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* supra, 69 Cal.2d at pp. 42-43.)

In at least one instance, the Court of Appeal has approved admission of a car rental receipt found in a car driven by the defendant without discussing whether it amounted to an adoptive admission. The court held that "The rental receipt may not be deemed hearsay, for it was not offered or admitted to prove the truth of the matter stated thereon. (See Evid. Code, § 1200.) Instead it established that [the defendant] *had in his possession* a paper indicating that he had rented the automobile a day after the first of the charged robberies. It was relevant circumstantial evidence since it had a 'tendency in reason to prove . . . any disputed fact' (see Evid. Code, § 210) i.e., [the defendant's] guilt of the subject robberies." (*People* v. *Whittaker* (1974) 41 Cal.App.3d 303, 309 [115 Cal.Rptr. 845]; see *United States* v. *Marino* (6th Cir. 1981) 658 F.2d 1120, 1124-1125 [admission of airline tickets used to prove defendant traveled in interstate commerce approved because "defendants' possession of the tickets and the other documents constituted an adoption"].)

Justice Jefferson has strongly criticized the use of possession alone as a basis for avoiding exclusion as hearsay. He asserts that the *Whittaker* decision was "clearly *untenable* and *erroneous*" because if it were generally applied then "the truth of a document written by any declarant is established from the *mere fact* of possession of such document by a *party.*" (Jefferson, *supra,* § 1.1 at p. 19.) Instead, he argues invoices should be viewed as "implied hearsay statements" which are admissible only under exceptions

to the hearsay rule and urges requiring additional evidence. For example, if the prosecution wishes to use a utility bill found on the premises to show the defendant's possession or occupancy of the property, supporting evidence might take the form of "testimony of a witness that he saw defendant on the premises on other occasions; that the utility bill was found in a drawer with clothes identified as belonging to defendant; or that defendant was seen exercising control over the contents of a drawer in which the bill was found. What is important is that items of evidence of the kind indicated must be such that the trial judge can reasonably conclude *from such evidence* that the requirements of the hearsay exception for a party's adoptive admission are satisfied." (Jefferson, *supra,* § 1.3, at pp. 48-49.)

In one later case *Whittaker* was used for a limited purpose. The trial court admitted as relevant to whether a defendant had resided in a house where narcotics were being manufactured: (1) an unsigned lease and a rent receipt, both bearing her name; (2) a receipt from a moving company addressed to the residence and signed by the defendant; (3) an unlawful detainer summons addressed to her; (4) a driver's license in defendant's maiden name; and (5) numerous photographs of defendant and her husband and child. (*People* v. *Goodall* (1982) 131 Cal.App.3d 129, 139-140 [182 Cal.Rptr. 243].) On appeal, the defendant asserted that the documents were inadmissible hearsay. The trial court had admitted them at trial "simply for the fact that those documents were found," and the Court of Appeal approved, holding that "the trial court was correct in determining that the documents and other evidence . . . were relevant for a nonhearsay purpose (*People* v. *Whittaker,* [*supra*]). Without considering the documents for the truth of the matter stated therein, it is relevant that documents bearing appellant's name or other items reasonably identifiable as appellant's were found at the residence. . . . The jury could infer that these items would not have been so located unless [defendant] had either some dominion and control over the residence or a presence sufficient to give her an awareness of what was going on . . . ." (*Id.,* at p. 143.) Unlike the use made of the documents in *Goodall,* however, the evidence here was utilized for the truth of the matters stated therein rather than to show that defendant lived where he was arrested.

Defendant's authenticated signatures on the invoice, even when considered in conjunction with the fact that it was found when his home was searched, did not provide sufficient foundation for the documents to be admitted pursuant to section 1221 or any other hearsay exception for use as to their content. The signature alone was not enough; the documents were introduced not to prove defendant's presence where they were found, but to show his presence outside the jurisdiction. We now turn to whether the

court could nonetheless properly consider the documents in determining whether to revoke defendant's probation.

## II. *Due Process and Revocation Proceeding*

In *People* v. *Winson, supra,* 29 Cal.3d 711, we explored when a court, over objection by the defendant, may admit a preliminary hearing transcript to be used in lieu of live testimony at a revocation hearing. We concluded that the use of such testimony was best determined on a case-by-case basis, and in that instance it was improper to admit the transcript. In reaching that result, we focused on the facts that "the testimony at issue was that of the sole percipient witness to the alleged parole violation, a finding of *no* legal unavailability was made in the underlying proceedings in which the charges were then dismissed, no additional evidence was introduced which established the witness' unavailability, and the court made no specific finding of good cause for denying the right to confront and cross-examine." (29 Cal.3d at p. 719.) However, we stressed that "within this context the right of confrontation is not absolute." (*Ibid.*)

Our decision rested upon and was consistent with that of the United States Supreme Court in *Morrissey* v. *Brewer, supra,* 408 U.S. 471, in which the high court observed that "We emphasize there is no thought to equate this second stage [the hearing procedure] of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (P. 489 [33 L.Ed.2d p. 499].) This emphasis on flexibility was echoed the next year in *Gagnon* v. *Scarpelli, supra,* 411 U.S. at p. 783, footnote 5 [36 L.Ed.2d at p. 662], where the court observed "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements."

Paying heed to the goal of flexibility and accommodation firmly reiterated in both state and federal authority, we now review approaches which courts have taken in the wake of *Morrissey* and *Gagnon.*[3] In one recent decision,

---

[3]Rule 32.1 of the Federal Rules of Criminal Procedure (18 U.S.C.) was enacted in 1979 and effective the next year. It provides in relevant part that at a revocation hearing "The probationer shall be given [¶] (A) written notice of the alleged violation of probation; [¶]

the Seventh Circuit observed that "The use of hearsay as substantive evidence at a revocation hearing is not per se unconstitutional." (*Egerstaffer* v. *Israel* (7th Cir. 1984) 726 F.2d 1231, 1234; see also *Taylor* v. *United States Parole Com'n* (6th Cir. 1984) 734 F.2d 1152, 1155.) The court in *Egerstaffer* reiterated, however, that a hearing examiner was not permitted "to admit unsubstantiated or unreliable evidence as substantive evidence at revocation hearings. Sanctioning the use of such hearsay would certainly eviscerate the safeguards guaranteed probationers by *Morrissey* and *Gagnon*. Nonetheless, where hearsay bears a substantial guarantee of trustworthiness, the flexible revocation proceeding allows its use." (726 F.2d at p. 1235.) The circuit court then approved reliance on a recorded unsworn interview by the victim of an assault which formed *part* of the basis for revocation, and found as indicia of reliability the facts that: (1) the statements were detailed; (2) the victim told substantially the same story to three persons in different settings reducing the probability of fabrication; (3) eyewitness testimony corroborated part of the account; and (4) the defendant had admitted many of the facts.

A review of other cases shows a similar willingness to consider otherwise inadmissible hearsay evidence when accompanied by reasonable indicia of reliability. For example, in *United States* v. *Penn* (11th Cir. 1983) 721 F.2d 762, a probation officer testified to results of urine tests over defendant's objection and the court admitted laboratory reports and an unsworn letter from the laboratory summarizing various test results. The appellate court found that the trial court reasonably determined that the laboratory reports were trustworthy and reliable and therefore worthy of consideration because they were "the regular reports of a company whose business it is to conduct such tests." In addition, "Although there was no corroboration of the specific results of the lab reports, there was general corroboration of the allegation that Penn had been taking drugs." (*Id.*, at p. 766.) (See also *United States* v. *McCallum, supra,* 677 F.2d at p. 1026 [letter from Salvation Army center sufficiently reliable: official report to probation officer from the center's program coordinator and caseworker. Reliability "also established by McCallums' testimony in which he admitted loss of his job and infractions of the center's rules"]; *United States* v. *Burkhalter* (8th Cir. 1978) 588 F.2d 604, 607 [overruling defendant's objection to probation officer's reliance on and admission into evidence of vocational school instructor's letter to probation officer: "The sources are people who were familiar with ap-

---

(B) disclosure of the evidence against him; [¶] (C) an opportunity to appear and to present evidence in his own behalf; [¶] (D) the opportunity to question witnesses against him; and [¶] (E) notice of his right to be represented by counsel." (Subd. (a)(2).)

According to the notes of the Advisory Committee on rule 32.1, "The hearing required by Rule 32.1 (a)(2) is not a formal trial; the usual rules of evidence need not be applied." (See *United States* v. *McCallum* (4th Cir. 1982) 677 F.2d 1024, 1026.)

pellant. They have not mistaken his identification nor his activities for those of any other individual. Their jobs require that they not only be aware of appellant's activities but also monitor his general behavior . . . . Furthermore, appellant's own admission . . . supports the reports. . . . Testimony as to appellant's falsification of his weekend destination has an independent basis in his own admission and was therefore properly admitted"]; *United States* v. *Pattman* (8th Cir. 1976) 535 F.2d 1062, 1064 [use of out-of-state police report of arrest proper to establish fact of arrest where it contained defendant's name, accurate physical description, and defendant had admitted to probation officer that he was in area of arrest at time in question]; but see *United States* v. *Caldera* (5th Cir. 1980) 631 F.2d 1227 [laboratory report improperly admitted based on testimony of police officer who did not participate in chemical analysis or personally perform test].)

In another recent case, *Taylor* v. *United States Parole Com'n, supra,* 734 F.2d 1152, the Sixth Circuit concluded that a letter from an out-of-state probation officer regarding the circumstances leading to the arrest of a parolee was admissible and could be considered as evidence of a parole violation. However, the court disagreed with the action of the regional parole commission which revoked parole after deciding that the letter "justified a finding that Taylor had engaged in new criminal conduct." (*Id.,* at p. 1154.) The court's concern was "with the paucity of reliable evidence of petitioner's criminal conduct and not with the hearsay nature of the evidence which was presented. A finding of criminal conduct based solely upon a probation officer's summary of an arrest report is but a step away from a finding of criminal conduct based solely upon evidence of a parolee's arrest with no account of the underlying circumstances." (*Id.,* at pp. 1155-1156, fn. omitted.) ▮ *Taylor* thus stands for the proposition that hearsay may be admissible but its substance must be treated with care before it provides grounds for revocation.

The present case is a close one. We conclude that the invoice from Hertz, accompanied by the hotel receipt, both of which were seized from defendant's home, here provided a sufficient basis for the court to revoke probation. The significant factor is the uncontroverted presence of defendant's signatures on the invoice. The invoice bears the Hertz emblem and stamped in the box in which is printed "Vehicle Rented at (City/State)" are the words "O'Hare Field, Chicago, IL." This stamp is followed by an additional handwritten inscription: "Hyatt." The invoice also includes on its face a printed agreement for the rental of the car in which it is stated in capital letters that "The vehicle is rented upon the conditions shown on this page and upon the reverse hereof. Customer represents that he has read, understands and agrees with the conditions." This language is followed by the signature of Donald L. Maki. The invoice is date-stamped January 27

and the date due listed on the agreement is January 29, 1983. It is signed again by defendant in the section "Refund Received By" which indicates that a refund was paid on the deposit made on the rental.

The second document also considered by the court is headed by the printed words "Hyatt Regency O'Hare." Entitled "Customer Receipt," it states that a sum was "received from 'Maki'" and is dated "1-28-83." The date, name, and sum are entered in unidentified handwriting on the otherwise printed form. Standing alone, this receipt has at best minimal probative value. It would constitute an insufficient basis upon which to revoke probation. However, when viewed in conjunction with the Hertz invoice showing rental of a car at the "O'Hare Field, Chicago, IL 'Hyatt'," it serves to corroborate the information in the invoice indicating that defendant was in Chicago in January 1983.

If the invoice were simply printed and filled out by an unidentified hand and devoid of defendant's signature, our conclusion would be that it alone, or even accompanied by the hotel receipt, would be insufficient to find a violation of probation.[4] However, the identification of defendant's signature on the printed invoice and the fact that it is an invoice of the type relied upon by parties for billing and payment of money, lead us to find it sufficient here. (See *United States* v. *Penn, supra,* 721 F.2d at p. 766 [laboratory reports admissible despite no testimony by anyone from the laboratory who had been involved in either the testing which led to reports or preparation of reports themselves. "In the absence of any evidence tending to contradict Penn's drug usage or the accuracy of the lab tests, his confrontation rights were not infringed by the admission of Busby's [the probation officer who had requested the tests] testimony or the exhibits."]) Imprinted with a Hertz emblem, the invoice appears to be a typical one utilized by Hertz in transacting business, and it contained internal evidence of its place of issue to which had been affixed an identifiable signature by defendant. "In the absence of any evidence tending to contradict" the information contained in the invoice and the accuracy of the inference that defendant was of necessity in Chicago signing the invoice on January 27, 1983, we believe that the documents here were properly considered by the trial court and provided a sufficient basis from which it could conclude that defendant violated the terms of his parole by leaving the area without permission.

The judgment is affirmed.

Mosk, J., Kaus, J., Broussard, J., and Grodin, J., concurred.

---

[4]This assumes of course that no further evidence was admitted regarding the normal preparation of such documents, or otherwise establishing a hearsay exception.

**BIRD, C. J.,** Concurring and Dissenting.—I write separately because the majority opinion blurs the question of admissibility of evidence with the issue of the sufficiency of evidence. The majority implicitly hold that the hotel receipt was admissible. Yet it is devoid of any of the indicia of reliability required for admissibility. On its face, there is no clue as to the time or manner of preparation. The receipt contains no signature or even Maki's first name or initial. Further, the amount of money specified ($20.03) seems a questionable sum for a hotel room in 1983.

The majority use this receipt to corroborate the Hertz invoice. I fear that such reasoning could in future cases lead to the admission of unreliable hearsay and to revocations based on the cumulative weight of several items of unreliable hearsay.

Unless the majority have changed the rules of evidence, documents which do not fall within a recognized hearsay exception must be reliable in order to be admissible. I would so hold.

Reynoso, J., concurred.