[No. G015143. Fourth Dist., Div. Three. Nov. 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL MORALES PEREZ, Defendant and Appellant.

**COUNSEL**

Beatrice C. Tillman for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEDSWORTH, J.\***—On June 22, 1990, Jesus Palafox[1] Huerto pleaded guilty to possession of cocaine for sale and was placed on probation. On October 10, under the name of Miguel Morales Perez, he was found to have violated that probation by failing to report. On September 30, 1993, he was found again to have violated probation, this time by selling cocaine. The case reaches us because Perez contends the prosecution failed at the September violation hearing to establish that he was still Jesus Huerto, the probationer.

I

Miguel Perez's probation violation was part of a calendar of at least 93 cases. As might be expected with a calendar that size, the parties pretty

---

\*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]While this name is variously presented as "Palafos" and "Palatos" the signature on the *Tahl* (*In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) form is clearly "Palafox."

much passed over the salad course and went straight to the entree: "The Court: . . . . [¶] Let's call this matter, 80 and 93, Miguel Morales Perez and Jesus Palafos [*sic*] Huerto. [¶] There's too much noise in the background; I can't hear. [¶] [Defense Counsel]: We're ready. [¶] The Court: We've called your case. What is your true name, sir? [¶] The Defendant: Miguel Perez. [¶] The Court: All right, both sides are ready. So it's alleged Mr. Perez is in violation of his probation in that he sold some cocaine. [¶] Ms. Chen? [¶] [The Prosecutor]: Your honor, the People would like the court to take judicial notice of both files. Apparently page 80 is here for the hearing. The basis of the hearing is, even though it says it's here for hearing, I believe that it should be here just for reference only. [¶] The Court: All right. [¶] [The Prosecutor]: We'd like judicial notice taken of the first file, and call our first witness, Officer Bollinger."

Officer Bollinger was not only the first witness, but the only one. He testified he had encountered "Miguel Perez Morales"[2] on March 3, 1993, and purchased two rocks of cocaine from him. Defense counsel did not cross-examine or call any witnesses. Instead he argued, "Identity wasn't proven on the probationer. Probationer was never identified as the individual who has the open file in front of the court per the probation violation."

The trial judge, while recognizing the burden upon the prosecution to prove the elements of the probation violation, ruled against Perez. Distilled from his thorough discussion of the relative merits of an "intellectual approach" vis-à-vis a "real world" analysis of the actualities of a lengthy probation violation calendar, his ruling was that the prosecution need only prove Perez was the person who sold the cocaine, and if there was an issue about whether he was the probationer, it was for Perez to raise.

## II

The touchstone of any discussion of the hearing rights of a probationer is *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].[3] There the Supreme Court held such hearings are "not part of a criminal prosecution and thus the full panoply of rights due a defendant in

---

[2]In most Latin American countries, the surname is formed by listing first the father's name, then the mother's maiden name. Because this is exactly opposite Anglo-American tradition, it is not unusual for arrest records of Hispanic-surnamed individuals to include at least one alternative rendition of their surname, often unfairly characterized as an "alias." Others can be the result of simple misspellings of names unfamiliar to the booking officer. Perez, however, had 22 aliases; it's difficult to chalk that up to cross-cultural misunderstanding.

[3]While *Morrissey* deals with the rights of parolees, an unbroken line of decisions has held there is no difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation. (*Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 782 [36

such a proceeding does not apply. . . ." (*Id.* at p. 480 [33 L.Ed.2d at p. 494].) Instead, "What is needed is an informal hearing structured to assure that the finding of a . . . violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [probationer's] behavior." (*Id.* at p. 484 [33 L.Ed.2d at p. 496].) The only rubrics prescribed for such a hearing in *Morrissey* were that it provide the alleged violator written notice of the claimed violations, disclosure of the evidence against him, opportunity to be heard in person and to present witnesses and documents, confrontation of adverse witnesses (unless the hearing officer specifically finds good cause for denial of confrontation), a neutral factfinder, and a written statement of the evidence relied upon and reasons for revocation. (*Id.* at p. 489.)

California courts have assayed since *Morrissey* to delineate the form of these "informal hearings." They have wrestled with the burden of proof (*People* v. *Rodriguez, supra,* 51 Cal.3d 437, 442), the right to confrontation of witnesses (*People* v. *Winson* (1981) 29 Cal.3d 711, 716 [175 Cal.Rptr. 621, 631 P.2d 55]), the use of hearsay (*People* v. *Maki* (1985) 39 Cal.3d 707 [217 Cal.Rptr. 676, 704 P.2d 743]), the use of illegally seized evidence (*People* v. *Hayko* (1970) 7 Cal.App.3d 604, 609 [86 Cal.Rptr. 726]), the introduction of evidence of another offense for which the probationer was acquitted (*In re Coughlin* (1976) 16 Cal.3d 52, 54 [127 Cal.Rptr. 337, 545 P.2d 249]), the propriety of insanity defenses (*People* v. *Breaux* (1990) 101 Cal.App.3d 468, 474-475 [161 Cal.Rptr. 653]), and the timing of the hearing (*People* v. *Coleman* (1975) 13 Cal.3d 867, 889-890 [120 Cal.Rptr. 384, 533 P.2d 1024]).

Throughout, they have maintained a delicate balance. On one side of the fulcrum is the fact probationers have only "conditional liberty," their freedom is at bottom an "act of clemency" (*People* v. *Rodriguez, supra,* 51 Cal.3d 437, 445), and its revocation should not require a full-blown adversarial deployment. On the other side is the "grievous loss" probation revocation can occasion (*People* v. *Vickers* (1972) 8 Cal.3d 451, 456 [105 Cal.Rptr. 305, 503 P.2d 1313], quoting *Graham* v. *Richardson* (1971) 403 U.S. 365, 374 [29 L.Ed.2d 534, 543, 91 S.Ct. 1848), and the obligation of the criminal justice system to provide fairness even to those citizens who have transgressed.

 This case presents still another juncture of the probationer's limited rights, the state's limited resources, and the judicial imperative of a fair

L.Ed.2d 656, 661-662, 93 S.Ct. 1756]; *People* v. *Rodriguez* (1990) 51 Cal.3d 437, 441 [272 Cal.Rptr. 613, 795 P.2d 783].)

hearing. We must decide the amount of adherence to a formal order of proof required in a revocation hearing. The issue here is whether the prosecution must affirmatively establish that the person who appears in court, steps forward when the case is called, and sits next to defense counsel throughout the hearing is in fact the probationer. We think not. We hold it is within the court's discretion in conducting an informal hearing to dispense with such proof unless that person somehow indicates it is at issue.

We can find no cases on this question here or anywhere else. "As a general rule, jurisdictions, accepting *Morrissey's* invitation [to informality], do not apply their formal rules of evidence to either probation or parole revocation proceedings. Persons conducting the hearings are given considerable latitude in deciding the order of proof and the evidence to admit." (Cohen & Gobert, The Law of Probation and Parole (1992 supp.) p. 435.) This latitude may explain the dearth of case law.

The simple fact is there is almost never any issue regarding the identity of the person at the counsel table. That person has already been arraigned on the violation, and probation has been summarily revoked. A violation hearing date has been set and the person has been ordered to return to court for that hearing. Often the person has been ordered to remain in custody pending the hearing. While it is important to recognize that human beings and their systems make mistakes, and it is not inconceivable that people can be so overawed by the criminal justice system as to be unable to communicate effectively with the court or their counsel, experience has shown it is extremely unusual for the wrong person to arrive at a violation hearing.

If there is an issue regarding identity of the probationer, the time to raise it is the arraignment on the violation. If the person before the court is not the probationer, that person has no basis upon which either to admit or deny the petition, and the court should be immediately informed of that fact. Even taking into account the crowded arraignment calendars of most courts, it should be possible to determine with a fair amount of certainty whether the person before the court denies being the probationer. In the absence of such a denial, the court which conducts the violation hearing is free to dispense with proof of that point, and the prosecution need not be prepared to go forward on it. If, for some reason, the issue were missed at the arraignment stage, the prosecution would be entitled to a recess or short continuance in order to allow it to prove this element of the violation.

This procedure both protects the probationer's rights and comports with *Morrissey*'s call for informality. If the prosecution were required to establish the probationer's identity as a part of all violation hearings, it would be

necessary in every case to subpoena judges ("That's the person I put on probation."), probation officers ("He admitted to me he was the probationer."), fingerprint experts ("Yes, the fingerprints of the person I obtained here in court twenty minutes ago are the same as those on this booking sheet.") or booking records with photographs (a prospect dreaded by every bench officer who has ever tried to resolve an issue by resort to them). The result would be chaos, backlog, and expense neither intended by the Legislature nor required by the Constitution. And to no legitimate end, since, in the overwhelming majority of cases, this input would be wholly unnecessary.

Equally important, by requiring the probationer to notify the court of an identity challenge at the arraignment stage, we reduce the likelihood of holding the wrong person until the hearing. If the parties are apprised at arraignment of a question concerning the identity of the probationer, we have every confidence they will make a serious effort to resolve that question immediately. In the rare instances in which this comes up, a few phone calls or a short postponement of the arraignment may save both sides a great deal of distress and expense. At the very least, this will ensure a more focused and expeditious violation hearing and obviate a requirement which "would further tax limited judicial resources by complicating and lengthening revocation proceedings." (*People* v. *Rodriguez, supra,* 51 Cal.3d at p. 446.)

In most cases, the violation hearing will center not on who the probationer is, but on what the probationer did. Identity may be an issue in that determination. Here, for example, it was the burden of the prosecution to establish that the person who sold rock cocaine to Officer Bollinger on March 3, 1993, was Perez. That is an issue all parties could reasonably be expected to anticipate and prepare for. But it is rare to the point of uniqueness for someone to defend at a probation violation hearing on the ground of never having been placed on probation.[4] And it would be gratuitously wasteful to require all violation hearings to include a ritualistic proof of that fact.

Perez and his attorney had appeared on this violation six times before the violation hearing. Minute orders for several of those appearances show Miguel Morales Perez as an alias of Jesus Huerto. Additionally, Perez had

---

[4]Although the trial court indicated Perez's attorney makes this argument "twice a month," we had not previously encountered it until two of that attorney's cases reached us. In the other case, *People* v. *Saldana*▌ (Cal.App.) we hold the probationer adequately raised the issue in the court below. Cohen and Gobert devote an entire chapter of The Law of Probation and Parole to "Defenses to Revocation," including hundreds of case citations, without any mention of such a defense. (Cohen & Gobert, The Law of Probation and Parole, *supra,* at § 10, pp. 494-523.)

suffered a previous violation on this case in 1990, for which he had been incarcerated for 90 days, again under the name Miguel Morales Perez. By the time the prosecution rested in this hearing and defense counsel addressed the court in argument, the train had left the station on a contention Perez was not the probationer. While we would not diminish in any way the probationer's right to a full hearing, we see no reason why the courts, in shaping the form of such hearings, should not recognize and act upon such real-world considerations as the history of this case.

The California Supreme Court, in holding that facts justifying probation revocation need be established only by a preponderance of the evidence, emphasized that ". . . legislatures have been constitutionally free to fashion these procedures as pliant tools for use by judges. Our decision today ensures that probation revocation retains such flexibility." (*People* v. *Rodriguez, supra,* 51 Cal.3d at p. 442.) This flexibility is both justified and required by the limited nature of revocation hearings, and is the basis for our holding in this case.

■ After all, the purpose of a revocation hearing is to give the probationer a chance to explain or deny the allegations of the violation petition. As stated in *Morrissey,* "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 488 [33 L.Ed.2d at p. 498].) Nothing in our holding today interferes with that opportunity.

■ This is, of course, not the way criminal trials are conducted. But this is not a trial. "Probation revocation hearings and criminal trials serve different public interests, and different concerns may shape the People's pursuit of revocation and conviction." (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 347 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) As the United States Supreme Court has emphasized, ". . . there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 788-789 [36 L.Ed.2d 656, 665] [right to counsel at revocation hearing discretionary with states].)

Chief among these differences is the preservation of what *Morrissey* envisioned as an informal hearing in which the bench officer's role is "predictive and discretionary" as well as factfinding. There is a very real likelihood that the more formalistic and adversarial these hearings become, the more punitive will be their outcome. One of the reasons the Supreme

Court rejected an across-the-board requirement of counsel for revocation hearings was its concern that as these hearings become more akin to trials "the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate rather than to continue nonpunitive rehabilitation." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. at p. 788 [36 L.Ed.2d at p. 665].) Other reasons, equally applicable here, were increased costs and prolonged decisionmaking.

As the *Gagnon* court recognized, there will be some cases in which the problems associated with formalism are unavoidable. We do not suggest the fairness of a probationer's hearing can ever be subordinated to expedience. "But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. at p. 788 [36 L.Ed.2d at p. 665].) If "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial" (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499]), it should also be flexible enough to dispense with the liturgy of proof of probationary status in those cases in which no one ever indicates it is at issue.

Of course, once such an issue is raised, the prosecution will be required to prove the person in court is the person placed on probation. This it will be required to do by a preponderance of the evidence. (*People* v. *Rodriguez, supra,* 51 Cal.3d at p. 442.) But unless and until that happens, it would be an unconscionable elevation of form over substance to require this as a part of all hearings.

The judgment is affirmed.

Wallin, Acting P. J., and Crosby, J., concurred.