Filed 12/31/14  P. v. Taylor CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br>v.<br><br>DARWIN BERNELL TAYLOR,<br><br>          Defendant and Appellant. | A141182<br><br>(San Francisco County<br>Super. Ct. No. CT14003478) |

Darwin Bernell Taylor was placed on postrelease community supervision (PRCS) following a conviction for a drug offense.  The probation department alleged that Taylor had committed new offenses and petitioned for revocation of PRCS.  At a contested revocation hearing, proof that Taylor had violated the law depended on allegations made in a 911 call placed by Cusanda Howard, who did not appear at the hearing.  Over Taylor's objection, the court ruled that the call was admissible as a spontaneous declaration.

The court found that Taylor had violated PRCS and reinstated PRCS, conditioned on Taylor serving 180 days in custody.  On appeal, Taylor contends that:  (1) the proceeding violated his due process right to confrontation because the 911 call was inadmissible and (2) the court should have considered a letter to which Taylor's counsel referred.

We find no merit in Taylor's arguments and affirm.

# BACKGROUND

On August 26, 2011, Taylor was convicted for possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) in San Mateo County and sentenced to two years and eight months in prison. On February 9, 2013, Taylor was released on PRCS. On September 11, 2013, Taylor was arrested for receiving stolen property (Pen. Code, § 496, subd. (a)),[1] and he served 30 days in custody for violating PRCS.

On February 6, 2014, the San Francisco Adult Probation Department, Taylor's supervising agency, petitioned for revocation of Taylor's PRCS pursuant to section 3455. A declaration from the probation department stated that Taylor had been arrested for alleged violations of section 245, subdivision (a)(4) (assault by means likely to produce great bodily injury), section 422 (threat of violence that will result in death or great bodily injury), section 594, subdivision (b)(1) (vandalism), and Vehicle Code section 10851, subdivision (a) (taking a vehicle without consent of the owner).

At a contested revocation hearing on February 21, 2014, the prosecutor commenced her case by playing recordings of two 911 calls placed by Cusanda Howard on February 2, 2014. In the second call, Howard identified Taylor as her boyfriend and stated that he had broken a window of her car with a bottle, threatened to "kick [her] ass," threatened her with a hammer, and driven away in her truck without her permission. The prosecutor argued that the calls were admissible as "excited utterances" under Evidence Code section 1240 and were non-testimonial, but defense counsel argued to the contrary on both points. After listening to the calls, the court ruled that the first call was not admissible, but that the second call was.[2] Taylor's counsel repeated his objection.

The prosecutor then called Jason Lai, a police officer who responded to Howard's call. Howard appeared to Lai to be calm, unexcited, and not crying. Near Howard's residence Lai observed a black Mercedes coupe with a broken window. Howard opened

---

[1] Further statutory citations are to the Penal Code, unless indicated otherwise.

[2] Only a transcript of the second call is in the record before us, not a copy of the recording itself. We have neither transcript nor recording of the first 911 call.

the trunk of the Mercedes with a key and Lai found a hammer in the trunk.  Lai did not find a bottle.

Lai's testimony was followed by that of Pavel Khmarskiy, another police officer. On February 2, 2014, he stopped a Chevy Silverado, registered to Howard and driven by Taylor.

The prosecutor argued that Taylor "is in violation because of the vandalism to the vehicle that is not his own, the threats made to the victim and the taking of a car that is not his own without permission."  Taylor's counsel argued that the court had insufficient evidence "to satisfy that this incident occurred the way that it has been proffered."

The court found by a preponderance of the evidence that Taylor had vandalized the Mercedes and violated Vehicle Code section 10851.  The court reinstated PRCS, conditioned on Taylor serving 180 days in custody.

Taylor timely filed a notice of appeal on February 24, 2014.

**DISCUSSION**

**I.** *Admission of the 911 Call as a Spontaneous Declaration was not an Abuse of Discretion*

Evidence Code section 1240 provides:  "Evidence of a statement is not made inadmissible by the hearsay rule if the statement:  [¶]  (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and  [¶]  (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."  This exception is sometimes referred to as the exception for "spontaneous declaration" or "excited utterance."  (See 1 Witkin, Cal. Evid. (5th ed. 2012) Hearsay, § 175, p. 1026.)  "[T]he basis for the circumstantial trustworthiness of spontaneous utterances is that in the stress of nervous excitement, the reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief."  (*People v. Farmer* (1989) 47 Cal.3d 888, 903, overruled on another ground in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.)

"Whether an out-of-court statement meets the statutory requirements for admission as a spontaneous statement is generally a question of fact for the trial court, the

3

determination of which involves an exercise of the court's discretion. [Citation.] We will uphold the trial court's determination of facts when they are supported by substantial evidence and review for abuse of discretion its decision to admit evidence under the spontaneous statement exception." (*People v. Merriman* (2014) 60 Cal.4th 1, 65 (*Merriman*).)

"The admissibility requirements for [spontaneous statements] are well established. ' "(1) [T]here must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' (*People v. Poggi* (1988) 45 Cal.3d 306, 318 . . . .)" (*Merriman*, *supra*, 60 Cal.4th at p. 64.)

We conclude that the court acted well within its discretion in determining that Howard's statements in the 911 call met the requirements of Evidence Code section 1240. Because Howard's statement described property damage and physical threats by Taylor (and the circumstances surrounding them), it clearly satisfied the requirements that the statement relate to an occurrence startling enough to cause nervous excitement. As does Taylor, we concentrate on the second of the three requirements.

"A number of factors may inform the court's inquiry as to whether the statement in question was made while the declarant was still under the stress and excitement of the startling event and before there was 'time to contrive and misrepresent.' [Citation.] Such factors include the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and whether the content of the statement suggested an opportunity for reflection and fabrication. [Citations.] . . . [T]hese factors 'may be important, but solely as an indicator of the mental state of the declarant.' [Citation.] For this reason, no one factor or combination of factors is dispositive." (*Merriman*, *supra*, 60 Cal.4th at p. 64.) Several

4

factors support a finding that Howard made the 911 call while under the stress of excitement.

First, it is clear from Howard's call that Taylor's alleged threats, vandalism of Howard's car, and taking of Howard's truck without permission occurred between Howard's two 911 calls. We do not know the exact span of time involved because not even the time of the first 911 call was entered into evidence, but in the second call Howard states, "I just called you guys." This indicates that the first call was made only a short period of time before the second call, and hence that the second call was made within an even shorter period of time after the events it purported to describe.[3]

Second, although the transcript of the second call covers four pages of interactive conversation between Howard and the 911 dispatcher, the crucial allegations about Howard's actions were blurted out and were not made in response to questioning. Before the dispatcher asked a single question, Howard stated, "[M]y boyfriend broke my window to my car." Shortly thereafter, the dispatcher asked for verification that the first call had been made from a McDonald's parking lot. Howard confirmed that, but then blurted further information about what had occurred: "Yeah, but now he drove me to my house and then he put—he just threw something in my car—threw at my other car, cause he's driving my truck. And he don't have permission to take my truck. He took my keys, and he made this threat me [*sic*], said he was going to kick my ass, and he threw all my stuff out my car."

Third, although the trial court had an advantage over us because it was able to hear a recording of the 911 call while we must rely on a transcript, the passage we have just quoted indicates a high degree of excitement and not reflection and deliberation. We believe that the 911 dispatcher also detected excitement, because immediately after that statement by Howard, the dispatcher said: "Cusanda, let me ask you some questions. I

---

[3] Although *we* do not know the exact period of time between the two 911 calls. *the trial court did* and confirmed that a very short period of time was involved: "[The second] 911 call was made within seconds or very, very close to when the window was allegedly broken of the victim's car, very shortly after the threats had been made."

just want you to answer my questions so I can understand what's going on, okay?"  We take this as an attempt to have Cusanda focus and collect herself.

To be sure, the fact that Lai, who responded to the 911 call, found Howard to be calm and unexcited argues against a determination that Howard made the call while under the stress of excitement, but enough factors argue *for* such a determination that it was well within the court's discretion to admit the 911 call as a spontaneous declaration.

"Although the Sixth Amendment confrontation clause does not apply in . . . revocation proceedings, [defendants] have a general *due process* right to confrontation and cross-examination in such proceedings.  [Citations.]"  (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 78.)  However, Taylor's argument that admission of the second 911 call at the revocation proceeding violated his due process right to confrontation is based on the same factual claim that the trial court rejected and for which we find no abuse of discretion—that the statements in that call were not spontaneous utterances.  Accordingly, we affirm that aspect of the trial court ruling as well.

## II.  *The Court Properly Rejected Consideration of Counsel's Information and Belief*

After evidence was presented at the revocation hearing, Taylor's counsel informed the court:  "I just received a letter from Mr. Taylor in the holding tank.  It's probably hearsay, but I'm informed and believe Cusanda Howard always felt safe with Mr. Taylor, also informed and believe based on the subsequent interview that she gave to the inspector in this case that they have no history of violence between them, that she was not—that she does not have fear of him.  She's not here because she does not want him in jail."  The prosecutor objected and the court stated, "I'm not going to allow this . . . .  It's totally improper."  Taylor's counsel replied,  "That's fine."

Taylor contends that "the court was obliged to inquire about the nature of this document and then consider whether it would consider it."  He relies on *People v. Winson* (1981) 29 Cal.3d 711, 719 (at a revocation hearing, where appropriate, witnesses may give evidence by document, affidavit, or deposition) and *People v. Maki* (1985) 39 Cal.3d 707, 709 (at a revocation hearing, documentary hearsay evidence may be admitted "if there are sufficient indicia of reliability").

6

We find nothing here of which Taylor can complain. Counsel's inferences based on Taylor's letter (and a follow-up interview of Howard by the police) are nothing but speculation predicated on hearsay. If Taylor's counsel had evidence that was admissible at a revocation hearing, it was incumbent on counsel to seek admission of that evidence. He did not do so; instead, he simply stated his information and belief and identified the hearsay sources of his own surmising. The court properly declined to consider counsel's statement.

We also note that Taylor was present at the revocation hearing and could have testified but exercised his right not to do so. Even if his counsel had sought to have Taylor's letter admitted into evidence, none of his cited authority supports a contention that a defendant may submit evidence by his own letter while exercising a right not to testify and be subject to cross-examination.

## DISPOSITION

The trial court's order on the matter of the petition to revoke Taylor's PRCS, dated February 21, 2014, is affirmed.

7

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.