Filed 5/20/26  P. v. Ramirez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B340027 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA099565) |
| v. | |
| GIOVANNI RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

The trial court revoked Giovanni Ramirez's probation after finding he failed to report to the probation department and failed to participate in a required drug treatment program. Ramirez contends the court's findings improperly relied on hearsay, namely facts recounted in a probation report and a letter from the drug treatment program. We conclude the court reasonably considered this hearsay and affirm.

## BACKGROUND

On December 14, 2023, Ramirez pleaded no contest to second degree burglary of a vehicle (Pen. Code, § 459) and admitted several potentially sentence-enhancing allegations. The trial court imposed an upper term sentence of three years, but suspended execution of that sentence and placed Ramirez on formal probation for two years.

As conditions of probation, Ramirez had to report to the probation department within 48 hours of release from custody and cooperate in a plan for drug treatment, including 12 months at a Salvation Army residential program. Ramirez was to be released only for transportation to the residential program or to a representative of Recovery Network Resource (RNR) for such transportation.

Several months later, in July 2024, the probation department recommended revocation of Ramirez's probation and execution of the previously pronounced sentence. According to probation officer Helen Pagan's written report, which she filed with the trial court, Ramirez failed to report to the department within 48 hours of release and failed to cooperate in the plan for drug treatment through the Salvation Army residential program. As to the treatment program, Ramirez had refused to attend intake. When interviewing Ramirez, the probation officer asked

2

Ramirez why he refused to enroll. Ramirez stated he had resumed using narcotics following his mother's recent death but was now willing to enroll and complete the program. The probation report cited a letter from Perry Zimmerman of RNR that he had previously prepared for, and filed with, the trial court. The letter stated when Ramirez was released to RNR, he informed RNR's driver he did not intend to go to the program. Despite the driver's attempt to persuade Ramirez to enroll, Ramirez refused and walked away. The probation report referenced other alleged violations, but they are not at issue.

The trial court held a probation violation hearing on July 23, 2024. Probation officer Lauro Mendoza, who did not author Ramirez's probation report, testified regarding the two alleged violations that are at issue. Mendoza stated that Ramirez did not complete the Salvation Army residential treatment program. Mendoza referenced probation officer Pagan's report and an electronic entry in a Justice Department portal indicating Ramirez had not completed the program. Defense counsel then objected on hearsay grounds and moved to strike. The court thought "it [was] hearsay" but believed it was "allowable" and overruled the objection. The court also noted it had the underlying probation report and letter from RNR. Mendoza then testified, based on the documents he had reviewed, that Ramirez had not reported to the probation department within 48 hours upon release from custody, and in fact had never reported to the probation department for this case. Defense counsel did not raise any further objection.

The court found Ramirez had violated both asserted conditions of probation. It then revoked probation and imposed

3

the previously suspended three-year prison sentence.  Ramirez timely appealed.

## DISCUSSION

Ramirez seeks reversal because the only evidence of his probation violations, he argues, was inadmissible hearsay.  The evidence he challenges, however, is the sort of hearsay arising from documentary evidence that courts admit, consistent with due process, at probation revocation proceedings.

"Although probation violation hearings involve the criminal justice system, they are not governed by all the procedural safeguards of a criminal trial." (*People v. Abrams* (2007) 158 Cal.App.4th 396, 400 (*Abrams*).)  The right to confront witnesses is " 'not absolute' " (*People v. Arreola* (1994) 7 Cal.4th 1144, 1156 (*Arreola*).)  Where " ' "appropriate," witnesses may give evidence by document, affidavit or deposition.' " (*People v. Maki* (1985) 39 Cal.3d 707, 710 (*Maki*).)  " '[D]ocumentary hearsay evidence which does not fall within an exception to the hearsay rule may be admitted if there are sufficient indicia of reliability regarding the proffered material,' even if the trial court makes no finding of good cause to deny the right to confront and cross-examine witnesses." (*People v. Gray* (2023) 15 Cal.5th 152, 165 (*Gray*).)

The cases draw a distinction between testimonial hearsay and routine documentary evidence.  Where evidence consists of a witness's account of disputed events — turning on perception, memory, and credibility — cross-examination can " ' "ensur[e] the integrity of the factfinding process." ' " (*Arreola, supra,* 7 Cal.4th at pp. 1157–1159; *People v. Winson* (1981) 29 Cal.3d 711, 717 (*Winson*).)  By contrast, where testimony is based on routine records, the witness "ordinarily would be unable to recall from actual memory" the underlying events and would "rely instead

4

upon the record," making demeanor not a significant factor in assessing reliability.  (*Arreola,* at p. 1157.)

The Supreme Court's decisions in *Winson, supra,* 29 Cal.3d 711 and *Maki, supra,* 39 Cal.3d 707 are illustrative.  In *Winson,* the court held a preliminary hearing transcript is "not a proper substitute for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause."  (*Winson, supra,* 29 Cal.3d at pp. 713–714.)  The hearsay in that report was a witness's account of an attack giving rise to the alleged probation violation.  The witness had testified that the defendant "grabbed him from behind, shoved him against a wall, and demanded money . . . then drew a knife . . . [and] cut the victim along the jaw and stabbed him in the back of the head."  (*Id.* at p. 714.)  The witness's perception and credibility were at issue and thus, absent good cause, defendant could not be denied cross-examination.  (*Id.* at p. 719.)

*Maki* evaluated a different type of evidence.  (*Maki, supra,* 39 Cal.3d 707 at p. 709.)  The prosecution introduced a rental car invoice bearing the defendant's signature and a corroborating hotel receipt, which together purportedly showed the defendant had traveled out of state in violation of a probation condition. *(Ibid.)*  Although the documents did not fall within a traditional hearsay exception, the court held they were nonetheless admissible because they bore "sufficient indicia of reliability" and were uncontradicted, making them a proper basis for finding a violation even in the absence of live testimony.  *(Id.* at pp. 709, 717.)  The court recognized that revocation proceedings permit proof of noncompliance through documentary evidence that provides a "substantial guarantee of trustworthiness."  (*Id.* at p.

715.)  In reaching that conclusion, the court explained that reliable documentary evidence may establish a violation without the testimony of a percipient witness, because such evidence reflects objective facts rather than disputed observations.  (*Id.* at pp. 715–717.)

In *Arreola, supra,* 7 Cal.4th 1144, the court clarified that *Winson* and *Maki* illuminate the "evident distinction between a transcript of former live testimony and the type of traditional 'documentary' evidence involved in *Maki* that does not have, as its source, live testimony."  (*Arreola,* at p. 1157; *Gray, supra,* 15 Cal.5th at p. 167 [reiterating this distinction].)

We find *Abrams, supra,* 158 Cal.App.4th 396 particularly helpful in addressing the evidence Ramirez challenges.  There, as here, a probation officer testified based on another officer's report and probation department records that the defendant had not reported to probation within 48 hours of release.  (*Id.* at p. 404.)  The court deemed this hearsay admissible because it concerned "routine matters such as the making and keeping of probation appointments, restitution and other payments, and similar records of events of which the probation officer is not likely to have personal recollection and as to which the officer 'would rely instead upon the record of his or her own action.' "  (*Id.* at p. 405.)  The court further explained that requiring the absent officer to testify "likely would not have added anything to the truth-furthering process, because he would be testifying to a negative" — that the defendant had not complied with the required probation conditions.  (*Id.* at pp. 404–405.)  In reaching this result, *Abrams* noted how *Maki* had approvingly cited *United States v. McCallum* (4th Cir. 1982) 677 F.2d 1024, 1026, in which a probation officer was permitted to "testif[y] to the receipt of a

6

letter from the Salvation Army explaining that the defendant had been expelled from its program." (*Abrams*, at p. 402, fn. 3.) *Abrams* also relied on *People v. O'Connell* (2003) 107 Cal.App.4th 1062, in which "the Third District affirmed the admission into evidence of a report from a drug treatment program recounting the defendant's absences from counseling sessions." (*Abrams*, at p. 403.)

This case is like *Abrams*. There, as here, the alleged violations consisted of failures to report to the probation department and to the designated treatment facility. The evidence of these lapses, in both instances, was a probation officer's presentation of probation records and related reliable documentation. As in *Abrams*, the inquiry does not turn on a witness's recollection of events, but on whether records reflect compliance when records are the typical way of recording compliance. Even if the reporting officer, Pagan, or the RNR representative, Zimmerman, had been called into court, their testimony would have been based on the same records and would not have added materially to the court's assessment. (*Abrams, supra,* 158 Cal.App.4th at p. 404.) The trial court was well within its discretion to admit the evidence Ramirez challenges and no due process violation is apparent. (See *id.* at p. 400.)

Ramirez argues *Abrams* is factually distinguishable and *People v. Shepherd* (2007) 151 Cal.App.4th 1193 (*Shepherd*) better matches the facts of his case. We view the *Shepherd* facts differently. In *Shepherd*, the alleged probation violation was alcohol consumption, and the challenged hearsay consisted of a probation officer relaying a program administrator's report that the defendant smelled of, and tested positive for, alcohol. (*Id.* at pp. 1198.) The court determined this testimony improperly

conveyed hearsay about defendant's conduct without good cause. (*Id.* at pp. 1201–1202.) The reliability of the report of consumption, the court noted, depended on the observer's perception and credibility. And it was unclear whether the program administrator had even witnessed the alleged violation. (*Id.* at p. 1202.)

By contrast, the relevant evidence here consisted of probation records and related documentation showing Ramirez failed to report to the department and failed to enroll in a drug treatment program — routine administrative facts reflecting the nonperformance of required acts. (*People v. Gomez* (2010) 181 Cal.App.4th 1028, 1039 [documentary evidence of failure to report is sufficiently reliable for probation revocation hearings under the due process standard].)

Additionally, unlike in *Shepherd*, the evidence of Ramirez's violations was not uncorroborated. (Cf. *Shepherd, supra,* 151 Cal.App.4th at p. 1202.) Indeed, Ramirez's statements against interest to the probation department acknowledged his failure to report to the drug treatment program and sought, rather, to be given another chance to comply.

Ramirez asserts the "good cause" test applicable to former live testimony should govern here. But other than attempting to align the facts of his case with *Shepherd*, which we find distinguishable, Ramirez makes no argument and cites no authority for why the more lenient rule of the documentary evidence cases, including cases decided by our Supreme Court, should not govern instead. Ramirez ignores the People's contention that reliable documentary evidence is treated differently, never citing or discussing, for instance, *Maki*. We have addressed the arguments Ramirez has properly made and

supported (*People v. Dunn* (2025) 18 Cal.5th 129, 181 [we consider only those claims a defendant supports with reasoned argument]) and they do not warrant reversal.

Because we conclude the evidence Ramirez challenges was properly admitted, we bypass the People's argument that Ramirez forfeited review by failing to object to admissibility in the trial court and Ramirez's counterargument that any failure to object would have been ineffective assistance of counsel. Counsel is not ineffective for failing to raise a meritless issue. *(In re A.A.* (2018) 30 Cal.App.5th, 596, 600.)

## DISPOSITION

We affirm the judgment.

SCHERB. J.

We concur:

WILEY, Acting P. J.          VIRAMONTES, J.

9