[No. D042335. Fourth Dist., Div. One. Jan. 22, 2004.]

JED JONES, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

John G. Phillips for Petitioner.

No appearance for Respondent.

Bonnie M. Dumanis, District Attorney, Anthony Lovett, Kim Thoa-Hoang and Laura E. Tanney, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**NARES, Acting P. J.**—This case involves interpretation of the criminal discovery chapter (Pen. Code,[1] § 1054 et seq., hereafter occasionally referred to as the Criminal Discovery Statute) implemented in 1990 as part of Proposition 115. The question of first impression we must decide in this writ proceeding is whether the reciprocal discovery provisions of the Criminal Discovery Statute apply to a probation revocation hearing such that a probationer is obligated to provide discovery to the prosecution in such a proceeding.[2] We hold that the reciprocal discovery provisions set forth in the criminal discovery chapter of Proposition 115 (§ 1054 et seq.) do not apply to a probation revocation hearing, and thus a probationer has no obligation to provide discovery to the prosecution in such a proceeding, because (1) a probation revocation proceeding is not a criminal trial within the meaning of section 1054.3 governing the scope of the discovery obligations of the

---

[1] All further statutory references are to the Penal Code.

[2] See Pipes & Gagen, California Criminal Discovery (3d ed. 2003) section 2:30, page 230 ("No published California opinion has decided whether the Criminal Discovery Statute applies to probation revocation proceedings"); California Criminal Law: Procedure and Practice (Cont.Ed.Bar 6th ed. 2002) Probation Revocations, section 45:17, page 1313 ("The courts have yet to decide whether, for purposes of the [Criminal Discovery Statute], a revocation hearing is a 'trial' "); 3 Erwin et al., California Criminal Defense Practice (2003) Discovery & Investigation, chapter 70.01[4][e], page 70-15 (rel.47-4/01) ("It is an open question whether the reciprocal discovery scheme [§§ 1054–1054.7] applies to probation revocation hearings, which arguably are not included within the meaning of 'criminal cases,' as used in the discovery scheme").

defense; and (2) neither this chapter, the Constitution of the United States, nor other statutory authority provides for such discovery. Accordingly, we grant defendant Jed Jones's petition for writ of mandate and direct the trial court to vacate its order requiring the defense to provide discovery to the prosecution in the probation revocation hearing in this matter.

## BACKGROUND

In January 1999, Jones pleaded guilty to one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). The conviction arose from his participation in a fight at a house party. One of the participants suffered a severe injury that resulted in quadriplegia. At the sentencing hearing, the court suspended imposition of sentence and placed Jones on five years' formal probation with standard and special terms and conditions plus 365 days' incarceration in county jail.

### Summary Revocation of Jones's Probation and Informal Exchange of Discovery

In December 2002, the People petitioned the court for an order summarily revoking Jones's probation, alleging that he had violated the terms and condition of his probation in October 2002 by (1) committing an assault (§ 240) in a restaurant in violation of condition No. 6a; (2) failing to abstain from the use of alcohol in violation of condition No. 7i; and (3) using force, threats, or violence on another person in violation of condition No. 10. The court granted the petition and summarily revoked Jones's probation. Jones made an appearance to deny the allegations, and the court set an evidentiary hearing in the matter.

On May 20, 2003,[3] defense counsel sent the People a written informal request for discovery and indicated the defense had audiotapes of two witnesses, one of whom was Alisia Parsons, that would be available to the People. Defense counsel also indicated he would call three witnesses to testify at the probation revocation hearing: Alisia Parsons, Marcos Bachling, and Ashley James, all of whom were present at the fight in question.

### Probation Revocation Hearing and the Court's Finding That the Defense Violated Proposition 115 Discovery Rules

The evidentiary hearing on the probation revocation petition commenced on May 27. Jones admitted he had violated condition No. 7i of his probation by failing to abstain from the use of alcohol and presented a defense as to the remaining probation violation allegations.

---

[3] All further dates refer to calendar year 2003 unless otherwise specified.

On May 29, after the People rested, the defense called Parsons as its first witness. During cross-examination, Parsons testified that she was present during the fight in the restaurant, and she heard foul language and "guys" cursing at each other when the fight ended. She also testified that Bachling and a man whose first name was "Lewis" yelled at Jones; and Lewis, who had a shaved head and tattoos on his arms and chest, and Bachling were the ones who fought with Jones. When asked how she knew Lewis, Parsons testified she had seen him at a few bars around town.

Parsons also testified she had spoken with the defense investigator, Mr. Martino, twice in person and three times by telephone, and she had given him information about Lewis. Parsons stated she recognized Lewis during the fight, but did not talk to the police about him when they arrived at the scene of the fight. She learned from Kristine Newark that Newark and Newark's brother, Steven, knew Lewis.

After the court excused Parsons, one of the two prosecutors, Hector Jimenez, told the court during a sidebar conference that he was shocked by Parsons's testimony and complained that "[t]his . . . is a three-ring circus." The other prosecutor, Polly Shamoon, complained that Parsons, a defense witness, knew about a person named Lewis and had given a statement to the defense investigator, but the prosecution was "never given discovery on anybody named Lewis." Shamoon accused Bachling, who had testified on May 27 and 28, of falsely testifying that the other man who had fought with Jones was a man named Robert Bunkers.[4] Shamoon also stated that "the defense had to know all of this was happening."

The court asked defense counsel whether he or his investigator had information, before Parsons testified, that Parsons recognized that the man who was with Bachling during the fight was named Lewis. Defense counsel replied that he did not have such information, and he did not know whether his investigator had that information. The prosecution expressed disbelief at defense counsel's response, arguing that Parsons had testified that she had told the defense investigator that the second person involved in the fight with Jones was named Lewis.

The prosecution then asked the court for an order striking Parsons's entire testimony and complained that the tape recording of Parsons's statement provided by the defense did not contain the information that the second man was named Lewis, not Bunkers. Prosecutor Shamoon told the court she had asked the defense for "any other reports for this witness [Parsons] or written notes or anything that we should [have] and they said no." Defense counsel

---

[4] Bunkers testified on May 29, before Parsons gave her testimony.

replied that he had asked his investigator whether he had any reports or notes, and the investigator went through his papers and said he did not think he had any. The court denied the prosecution's motion to strike Parsons's testimony and informed counsel it would be willing to grant a continuance to permit the prosecution to further investigate the matter.

Prosecutor Jimenez accused the defense of committing a "pattern of discovery violations," noting that it was not until the afternoon after Bachling testified that the defense faxed to Jimenez a half-page of notes, consisting of eight lines, pertaining to a statement given by Bachling. Both prosecutors argued the People would have cross-examined Bachling more extensively had they received from the defense information that Parsons knew the second man involved in the fight with Jones was a man named Lewis, not Bunkers.

The People made an oral motion for a ruling that the defense had violated the "discovery laws." The court gave the defense an opportunity to respond, and defense counsel argued there was no such violation because Bachling "was a witness to be called by the People in their case in chief."

The court ruled the defense had committed a discovery violation by failing to provide to the People, before the hearing started, the half-page of notes regarding Bachling's statement. Referring to the half-page of notes, defense counsel replied, "I never had it until today."

Prosecutor Jimenez then asked the court to make a finding that the defense had violated the "reciprocal discovery rules" by failing to provide information that Parsons told the defense investigator that Lewis, not Bunkers, was the second man involved in the fight with Lewis. The court granted the People's request for a continuance to June 6 for the purpose of investigating the matter further.

> *Jones's Motion To Reverse the Court's Finding That the Defense Had Violated Proposition 115 Discovery Rules*

On June 6, Jones filed a motion to reverse the court's ruling that his defense counsel had violated Proposition 115 discovery rules. In his moving papers, Jones stated that on May 29 the court "ruled that the defense had failed to provide <u>reciprocal discovery</u> to the prosecution, i.e. 1/3 of an 8 1/2 X 11 page of hand written notes written by an investigator hired by the defense concerning a witness called by the prosecution [Bachling] during the revocation of probation hearing herein." (Original underscoring.) Jones argued there was no case or statutory law requiring the defense to provide discovery to the prosecution at a violation of probation hearing.

*June 9 Order*

The court heard Jones's motion on June 9. Following oral argument, the court issued its ruling (hereafter the June 9 order) that under the Proposition 115 discovery provisions set forth in section 1054 et seq., "the defense has an obligation to provide reciprocal discovery in a probation revocation hearing." The court, however, reversed its May 29 finding that the defense had intentionally violated the Criminal Discovery Statute, noting that the law on this question was "unsettled" and the defense had turned over to the prosecution Martino's notes regarding Bachling's statements.

After further argument, the court discussed the following hypothetical scenario, recognizing that its ruling that the Proposition 115 discovery rules apply to probation revocation hearings could be prejudicial to a defendant in such a proceeding:

"Let's say that the defense has information as to the whereabouts of a person who was present at the time of the alleged probation violation in this case and that that person would just crucify [Jones] and would say that [Jones] was acting horribly and was an instigator and did all sorts of horrible, violent acts. If the defense does not have an obligation under the statute to turn over discovery, then if this court were to order that discovery be provided and it got provided, then the potential could be extreme prejudice to [Jones] based upon what could be determined to be an erroneous ruling by the court and it could go to a very significant issue as to the proof that the People are providing as to whether there is a probation violation. I just use that as an extreme example of what could be the type of issue at stake when addressing the issue of whether a defendant in a case has to provide information to the prosecution. [¶] *As I said, I believe there is that obligation*[.] So I think that it makes sense that the defense [desires] to pursue a writ to give the defense a reasonable opportunity to do that prior to potentially having to deal with issues that could be *extremely prejudicial to the defendant.*" (Italics added.)

*Jones's Writ Petition*

On June 19, Jones challenged the June 9 order by filing the writ petition in this matter. He alleges therein that the court erred as a matter of law and abused its discretion by ruling that (1) he was subject to Proposition 115 discovery rules during the pending probation revocation hearing, and (2) the court could order him to provide the names and statements of incriminating witnesses whom the defense had discovered but did not intend to call to testify during the hearing. Jones seeks an order prohibiting the court from enforcing the June 9 order or, in the alternative, an order compelling the court

to vacate the order. Jones also seeks an order prohibiting the court from requiring him to disclose the names and statements of witnesses the defense has discovered but does not intend to call at the probation revocation hearing.

*The Court's June 23 Clarification of the June 9 Order[5]*

On June 23, after Jones commenced this writ proceeding, the court held a status conference and clarified that the scope of its June 9 order was limited to statements made by witnesses that Jones intended to call at the probation revocation hearing. The court stated:

"So I just feel that I need to clarify the record because I don't believe that I ever said anything about what would happen if . . . the defense investigator had gone out, independently done investigation, found a witness and found out that witness had information for the defense case, I never said . . . that I would order discovery of that under [section] 1054."

*The People's Informal Response and the Order To Show Cause (OSC)*

The People filed an informal response to Jones's writ petition and argued that the petition should be summarily denied on various grounds. This court thereafter issued an OSC ordering the court to show cause why the relief requested in Jones's petition should not be granted.

*The People's Formal Response to the Petition*

The People filed a formal response to Jones's writ petition. Abandoning the position taken in the July 7 informal response, which opposed Jones's petition, the People admit the allegation in Jones's petition that the court erred as a matter of law in ruling that the reciprocal discovery provisions of Proposition 115 require Jones to provide discovery to the People at the probation revocation hearing. Stating that Jones "is correct in his assertion that the court may not order reciprocal discovery at probation revocation hearings," the People argue that (1) the plain meaning of California's criminal discovery statute determines the extent of discovery available at a probation revocation hearing, (2) by its own terms, that statute limits the discretion of a trial court to order discovery in criminal cases, (3) sections 1054.1 and 1054.3 authorize discovery only in the setting of criminal trial, (4) probation revocation hearings are not criminal trials, (5) discovery is not

---

[5] As will be seen, the court's clarification of the June 9 order rendered moot the portion of the prayer in Jones's petition that requested an order prohibiting the court from requiring him to disclose the names and statements of witnesses the defense has discovered but does not intend to call at the probation revocation hearing. Accordingly, we shall not further discuss this request.

mandated by the United States Constitution, and (6) there are no express statutory provisions for discovery in revocation proceedings outside the scheme of the criminal discovery statute.

## DISCUSSION

In this writ proceeding, Jones challenges the court's June 9 order, which construed the Proposition 115 reciprocal discovery provisions set forth in the Criminal Discovery Statute (§ 1054 et seq.) as requiring the defense to provide discovery to the prosecution in the pending probation revocation proceeding. We begin our analysis by examining the constitutional and statutory framework created by the passage of Proposition 115.

In June 1990, the electorate approved Proposition 115, the "Crime Victims Justice Reform Act" initiative, which authorized the "two-way street of reciprocal discovery" between the prosecution and the defense in criminal cases in California. (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 363 [285 Cal.Rptr. 231, 815 P.2d 304].) One leading commentator has noted that Proposition 115 "added constitutional provisions bearing directly and indirectly on discovery, added a new chapter in the Penal Code on the subject, and repealed provisions that were supplanted by the new law. [Citations.]" (5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 30, p. 76.) Witkin also notes that Proposition 115 made two fundamental changes in the California law of criminal discovery. (5 Witkin & Epstein, *supra*, § 30, p. 76.) First, it made discovery in criminal cases "reciprocal" (i.e., available to both the prosecution and the defense). (*Ibid.*) Proposition 115 added section 30, subdivision (c) to article 1 of the California Constitution. (See parenthetical note, 1C West's Ann. Const. (2002 ed.) foll. § 30, p. 415.) That subdivision provides: "In order to provide for fair and speedy trials, *discovery in criminal cases shall be reciprocal in nature*, as prescribed by the Legislature or by the people through the initiative process." (Italics added.)

Second, as a result of Proposition 115, discovery in criminal cases is now governed primarily by statutory law. (5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 30, p. 77.) The California Supreme Court has explained that "[i]n criminal proceedings, under the reciprocal discovery provisions of section 1054 et seq., all court-ordered discovery is governed exclusively by—and is barred except as provided by—the discovery chapter newly enacted by Proposition 115." (*In re Littlefield* (1993) 5 Cal.4th 122, 129 [19 Cal.Rptr.2d 248, 851 P.2d 42], citing §§ 1054.5, subd. (a) & 1054, subd. (e).) Section 1054.5, subdivision (a) provides in part that "[n]o order requiring discovery shall be ·made in criminal cases *except as*

*provided in this chapter*."[6] (Italics added.) Section 1054, subdivision (e) provides: "This chapter shall be interpreted to give effect to all of the following purposes: [¶] . . . [¶] (e) To provide that *no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States*." (Italics added.)

Most of the discovery provisions set forth in the Criminal Discovery Statute expressly apply to discovery in a trial setting. One commentator has observed that "[v]irtually every discoverable item under the [Criminal Discovery Statute] is *trial-related*." (Pipes & Gagen, California Criminal Discovery, *supra*, § 2:16, p. 201, italics added.)

"The scope of a defense attorney's discovery obligations under section 1054 et seq. is set forth in section 1054.3." (*In re Littlefield, supra*, 5 Cal.4th at p. 129.) All of the categories of discoverable items the defense is required to disclose to the prosecution under section 1054.3 are trial related: (1) the names and addresses of witnesses ("other than the defendant") that the defense intends to call "at trial" (§ 1054.3, subd. (a)); (2) "together with any relevant written or recorded statements" or "reports of the statements" of those trial witnesses that the defense intends to offer in evidence "at the trial" (*ibid.*); (3) "including any reports or statements of experts made in connection with the case" that the defense intends to offer in evidence "at the trial" (*ibid.*); (4) "including the results of physical or mental examinations, scientific tests, experiments, or comparisons" that the defense intends to offer in evidence "at the trial" (*ibid.*); and (5) "[a]ny real evidence" the defense intends to offer in evidence "at the trial" (§ 1054.3, subd. (b).)[7]

Section 1054.1,[8] which governs the prosecuting attorney's obligation to provide discovery to the defense, also limits that obligation to disclosure of

---

[6] The chapter to which sections 1054.5, subdivision (a) and 1054, subdivisions (a), (c) and (e) (quoted, *post*) refer is chapter 10 (Discovery) (§§ 1054–1054.10) of title 6 (Pleadings and Proceedings Before Trial). (See 50A West's Ann. Pen. Code (2004 supp.), pp. 35, 229.)

[7] Section 1054.3 provides: "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses *at trial*, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence *at the trial*. [¶] (b) Any real evidence which the defendant intends to offer in evidence *at the trial*." (Italics added.)

[8] Section 1054.1 provides in full: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses *at trial*. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶](d) The existence of

specific types of information and materials primarily in a trial setting. That section requires the prosecution to disclose the following trial-related information "if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies": (1) "[t]he names and addresses of persons the prosecutor intends to call as witnesses *at trial*" (§ 1054.1, subd. (a), italics added); (2) felony convictions suffered by any material witnesses "whose credibility is likely to be critical to the outcome of the *trial*" (§ 1054.1, subd. (d), italics added); and (3) "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call *at the trial*, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence *at the trial*" (§ 1054.1, subd. (f)). (Italics added.) Three other categories of discoverable items the prosecution is required to disclose to the defense under section 1054.1 are not specifically trial related: (1) "[s]tatements of all defendants" (§ 1054.1, subd. (b)); (2) "[a]ll relevant real evidence seized or obtained as part of the investigation of the offenses charged" (§ 1054.1, subd. (c)); and (3) "[a]ny exculpatory evidence" (§ 1054.1, subd. (e)).

Section 1054.7 governs the timing of the discovery disclosures required by the Criminal Discovery Statute and generally mandates that such disclosures be made before "trial." The section provides in part:

"The disclosures required under this chapter shall be made at least *30 days prior to the trial*, unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party *within 30 days of trial*, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred." (Italics added.)

Finally, some of the express purposes of the Criminal Discovery Statute, as set forth in section 1054, subdivisions (a) and (c),[9] appear to limit the

---

a felony conviction of any material witness whose credibility is likely to be *critical to the outcome of the trial.* [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call *at the trial*, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence *at the trial.*" (Italics added.)

[9] Section 1054, subdivisions (a) and (c) provide: "This chapter shall be interpreted to give effect to all of the following purposes: [¶] (a) To *promote the ascertainment of truth in trials by requiring timely pretrial discovery.* [¶] (b) . . . [¶] (c) To *save court time in trial* and avoid the necessity for frequent interruptions and postponements." (Italics added.)

application of the statute to a pretrial setting. These purposes, such as "promot[ing] the ascertainment of truth *in trials* by requiring timely *pretrial* discovery" and "sav[ing] court time in trial," refer only to a trial context even though similar objectives would be equally desirable in the context of a probation revocation hearing.

In construing the foregoing provisions of the Criminal Discovery Statute to determine whether they authorized the June 9 order, "our primary purpose is to ascertain and effectuate the intent of the voters who passed [Proposition 115,]" the initiative measure at issue here. (*In re Littlefield, supra,* 5 Cal.4th at p. 130.) "To determine intent, ' "The court turns first to the words themselves for the answer." ' [Citation.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' [Citation.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].)

■ Here, the statutory language of sections 1054, 1054.1, and 1054.3 (discussed, *ante*) clearly indicates that the reciprocal discovery obligations mandated by the Criminal Discovery Statute apply only in the context of a criminal "trial." Of particular importance are the provisions that govern the obligation of the defense to provide discovery. As already discussed, those provisions are set forth in section 1054.3, which expressly limits the discovery obligations of the defense to the providing of specified types of information concerning witnesses the defendant intends to call "at trial" and any real evidence he or she intends to offer in evidence "at the trial." Neither section 1054.3, nor any other provision of the Criminal Discovery Statute, obligates the defense to provide discovery in connection with a probation revocation hearing.

The validity of the court's order in this matter thus turns in large part on whether a probation revocation hearing, such as the one from which this writ proceeding arose, is a "trial" within the meaning of the Criminal Discovery Statute. One commentator has observed that "[t]he courts have exhibited a tendency to broadly interpret the Criminal Discovery Statute," and notes that the California Supreme Court stated in *People v. Robertson* (1989) 48 Cal.3d 18, 45 [255 Cal.Rptr. 631, 767 P.2d 1109] that " '[t]he meaning of "trial" varies depending on the context of its use.' " (Pipes & Gagen, Cal. Criminal Discovery, *supra,* § 2:17, p. 201, & § 2:30, p. 231.) The same commentator, however, states that "[t]he explicit use of the term 'trial' in the Criminal Discovery Statute is evidence that the statute is limited to a proceeding in which a trier of fact returns a verdict on the charges." (*Id.,* § 2:18, p. 202.)

■    Here, both parties assert, and we agree, that a probation revocation hearing is not a "trial" within the meaning of the Criminal Discovery Statute. In *People v. Perez* (1994) 30 Cal.App.4th 900, 907 [36 Cal.Rptr.2d 391], the Court of Appeal recognized that a probation revocation hearing "is not a trial." The *Perez* court noted that " '[p]robation revocation hearings and criminal trials serve different public interests, and different concerns may shape the People's pursuit of revocation and conviction.' " (*Ibid.*, quoting *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 347 [272 Cal.Rptr. 767, 795 P.2d 1223].)

The *Perez* court explained that, "As the United States Supreme Court has emphasized, '. . . there are critical differences between criminal trials and probation[ . . . ]revocation hearings, and both society and the probationer[ . . . ]have stakes in preserving these differences.' " (*People v. Perez, supra*, 30 Cal.App.4th at p. 907, quoting *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 788–789 [36 L.Ed.2d 656, 93 S.Ct. 1756].)

The California Supreme Court has explained that "[t]he fundamental role and responsibility of the hearing judge in a revocation proceeding is not to determine whether the probationer is guilty or innocent of a crime, but whether a violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain his conditional liberty. [Citation.]" (*Lucido v. Superior Court, supra*, 51 Cal.3d at p. 348.) The high court also stated in *Lucido* that "[a] probation revocation hearing assesses whether conditions relating to punishment for a prior crime have been violated so that probation should be modified or revoked; a criminal prosecution seeks conviction for wholly new offenses. [Citation.]" (*Id.* at pp. 347–348.)

While we need not elaborate here on all of the material distinctions between a probation revocation hearing and a trial, we mention a few to illustrate the fundamental difference between these two types of criminal proceedings. There is no right to a jury trial in a probation revocation proceeding. (*People v. Dale* (1973) 36 Cal.App.3d 191, 195 [112 Cal.Rptr. 93].) The standard of proof that applies at a probation revocation hearing is proof by a preponderance of the evidence, rather than the beyond-a-reasonable-doubt standard that applies to criminal trials. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447 [272 Cal.Rptr. 613, 795 P.2d 783].) Relaxed rules of evidence apply at a probation revocation hearing. (See *People v. Maki* (1985) 39 Cal.3d 707, 715 [217 Cal.Rptr. 676, 704 P.2d 743] [stating that in such proceedings courts have shown a "willingness to consider otherwise inadmissible hearsay evidence when accompanied by reasonable indicia of

reliability"]; *People v. Brown* (1989) 215 Cal.App.3d 452, 454 [263 Cal.Rptr. 391] ["As long as hearsay testimony bears a substantial degree of trustworthiness it may legitimately be used at a probation revocation proceeding"].) The exclusionary rule does not apply to a probation revocation hearing. (*People v. Harrison* (1988) 199 Cal.App.3d 803, 811 [245 Cal.Rptr. 204] ["[F]ederal law does not require application of the exclusionary rule to probation revocation hearings"].)

Because a probation revocation hearing is not a "trial" within the meaning of the Criminal Discovery Statute, and none of the express provisions of the Criminal Discovery Statute obligate the defense to provide discovery to the prosecution in connection with a probation revocation hearing, a determination of whether the court properly found that the reciprocal discovery obligations under Proposition 115 apply to a probation revocation hearing depends on whether such discovery is mandated by any other express statutory provisions or the federal Constitution.[10]

■ The parties have cited to no statutory provisions outside the Criminal Discovery Statute, and we are aware of none, that generally require reciprocal disclosure of discovery in connection with a probation revocation hearing. An examination of section 1203.2 et seq., which sets forth the procedural steps in revocation of probation, reveals no such provisions. (See generally 3 Witkin & Epstein, Cal. Criminal Law, *supra*, Punishment, §§ 584–586, pp. 777–782.)

■ Such reciprocal discovery is also not mandated by the United States Constitution. The Fourteenth Amendment to the United States Constitution states in part: "No state shall . . . deprive any person of life, liberty, or property, without *due process of law.*" In *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] (*Morrissey*), the United States Supreme Court established the minimal due process requirements in parole revocation proceedings. (See *People v. Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313] (*Vickers*).) In *Gagnon v. Scarpelli, supra,* 411 U.S. 778, the high federal court extended the *Morrissey* due process guarantees to probationers. (3 Witkin & Epstein, Cal. Criminal Law, *supra*, Punishment, § 582, p. 774.) In *Vickers, supra,* 8 Cal.3d at page 458, the California Supreme Court held that the federal *Morrissey* due process guarantees apply

---

[10] As already discussed, subdivision (e) of section 1054 provides that the Criminal Discovery Statute "shall" be interpreted to give effect to the purpose of "provid[ing] that no discovery shall occur in criminal cases except as provided by this chapter, *other express statutory provisions, or as mandated by the Constitution of the United States.*" (Italics added.)

to formal state probation revocation proceedings. Thus, as a matter of due process, a probationer facing a formal probation revocation hearing is entitled to (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; (5) a neutral and detached hearing body; (6) a written statement of the evidence relied on and the reasons for revoking probation.[11] (*Gagnon v. Scarpelli, supra,* 411 U.S. at p. 786, citing *Morrissey, supra,* at p. 489; *Vickers, supra,* 8 Cal.3d at p. 458.)

Prosecutors are constitutionally mandated to disclose exculpatory material evidence to defendants in criminal cases. (*People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1314 [96 Cal.Rptr.2d 264], citing *Brady v. Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 83 S.Ct. 1194].) However, "*Brady* exculpatory evidence is the only substantive discovery mandated by the United States Constitution. A criminal defendant does not have a general constitutional right to discovery. (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [51 L.Ed.2d 30, 97 S.Ct. 837]; *Gray v. Netherland* (1996) 518 U.S. 152, 168 [135 L.Ed.2d 457, 116 S.Ct. 2074]; accord, *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1258 [275 Cal.Rptr. 729, 800 P.2d 1159].)" (*Barrett, supra,* 80 Cal.App.4th at p. 1314.)

For all of the foregoing reasons, we hold that the Proposition 115 reciprocal discovery provisions set forth in the Criminal Discovery Statute do not apply to a probation revocation hearing, and thus a probationer has no obligation to provide discovery to the prosecution in such a proceeding, because a probation revocation proceeding is not a criminal trial within the meaning of section 1054.3 governing the scope of the discovery obligations of the defense; and neither the Criminal Discovery Statute, the Constitution of the United States, nor other statutory authority provides for such discovery. Accordingly, we grant Jones's petition and direct the trial court to vacate its order requiring the defense to provide discovery to the prosecution in the probation revocation hearing in this matter.

---

[11] As the California Supreme Court noted in *Vickers,* the majority in *Morrissey* did not reach the issue of whether the right to counsel at a probation revocation hearing is constitutionally compelled. (*Vickers, supra,* 8 Cal.3d at p. 461; see also *Gagnon v. Scarpelli, supra,* 411 U.S. at p. 788.) The *Vickers* court, however, held that, "as a judicially declared rule of criminal procedure [citation] a probationer is entitled to the representation of retained or appointed counsel at formal proceedings for the revocation of probation, or following . . . summary revocation in appropriate cases." (*Vickers, supra,* at pp. 461–462, fn. omitted.)

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order of June 9, 2003, and to enter a new and different order consistent with this opinion.

McDonald, J., and McIntyre, J., concurred.