Filed 9/5/13  P. v. Morgan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C068845 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00025) |
| v. | |
| AMBER ADALE MORGAN, | |
| Defendant and Appellant. | |

About 6:00 p.m. on December 31, 2009, a search of defendant Amber Adale Morgan during a traffic stop and pursuant to an arrest warrant revealed 19.1 grams of methamphetamine and $1,251 in cash.  In 2008, defendant had been convicted of and sentenced to state prison for possession of methamphetamine for sale.  (He  alth & Saf. Code, § 11378; unless otherwise stated, all further statutory references are to the Health and Safety Code.)

After the December 31, 2009 arrest, defendant entered a plea of no contest to transportation of methamphetamine (§ 11379, subd. (a)) and admitted a prior drug conviction (§ 11370.2, subd. (c)) in exchange for a sentencing lid of five years in state

1

prison, that is, the low term of two years for the offense plus three years for the prior conviction. Defendant also admitted misdemeanor offenses in two other cases with the agreement that punishment for those offenses would be served concurrently with the felony conviction.

The trial court imposed the five-year prison sentence, suspended execution of that sentence and placed defendant on probation for a term of five years subject to certain terms and conditions including 180 days incarceration in the county jail. The minute order relating to the sentencing reflects that the court imposed the "upper term" of five years but also refers to count two and the prior conviction. In imposing sentence, the court stated it imposed five years "which is the upper term on Count 2" although it recognized that defendant pleaded to count two and admitted the prior conviction.

Within a month, defendant admitted violating probation. She was found in possession of a controlled substance and paraphernalia, gave a false name to an officer, and drove on a suspended license. The court revoked and reinstated probation subject to an additional 180 days in county jail and modified conditions to include the prohibition of associating with known or reputed drug users.

Four months later, defendant admitted a second violation of probation. She possessed a controlled substance and gave a false name to an officer. The court again revoked and reinstated probation subject to an additional 240 days in county jail. In order to serve her time in county jail, defendant entered a waiver pursuant to *People v. Johnson* (1978) 82 Cal.App.3d 183 (*Johnson*).

Eight months later, a third petition for violation of probation alleged that defendant possessed methamphetamine (§ 11377, subd. (a)). Defendant contested the allegation.

After a contested hearing, the court sustained the allegation that defendant possessed methamphetamine. Over defense counsel's due process objection, the court also found that defendant violated probation by associating with known drug users. The

2

court denied the request for continued probation, and ordered execution of the five-year prison sentence.

Defendant appeals.

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant.

After reviewing the record this court requested supplemental briefing on three issues: (1) whether defendant was denied due process of law when the trial court found a violation of probation based on grounds not alleged in the petition, (2) whether modification of the judgment is required because the trial court imposed an "upper term" of five years for transportation of a controlled substance and did not sentence defendant for a prior drug conviction, and (3) whether the trial court erred in calculating presentence custody credits. We conclude the defendant was denied due process of law when the trial court considered and relied upon a nonalleged violation of probation as a basis for its decision to revoke defendant's probation. Even so, we also conclude that the court's error was harmless beyond a reasonable doubt. We conclude the abstract of judgment is in error where it reflects that defendant was sentenced to the five-year "upper term" for a violation of section 11379, subdivision (a), a matter that we can correct in this court on appeal. Finally we conclude that we must return the matter to the trial court for its further consideration of the proper presentence custody credits.

DISCUSSION

I

*Due Process of Law*

Citing *People v. Mosley* (1988) 198 Cal.App.3d 1167 (*Mosley*), defendant contends that the trial court erred and violated her right to written notice of one of the grounds that resulted in a finding that she violated her probation. The People argue the issue is moot because the trial court revoked probation on a properly alleged violation as well. We conclude that the violation of probation proceeding denied defendant due process of law, but that the denial was harmless beyond a reasonable doubt.

In his petition for an order revoking defendant's probation, the prosecutor alleged that: "On or about April 27, 2011, said defendant committed a violation of Section 11377(a) of the Health and Safety Code."

At the contested hearing, the following evidence was adduced. About 2:00 a.m. on April 27, 2011, Officers Jacob Guillon and Marcus Masingale stopped a car traveling with its trunk partially open. The driver, Floyd Allen, said the car belonged to defendant. His passenger was Charles Blackman.

A records check showed that the car was registered to Sarah Meyer and that the registration had expired in December 2010. A search of the car turned up 200 small plastic baggies, a glass smoking device for methamphetamine, and a pile of a light crystal substance (rock salt). The ignition and steering column were stripped. Allen was taken to an apartment complex so that law enforcement officers could talk to defendant about the ownership of the car.

At 3:00 a.m. the same day, the officers found defendant standing outside an apartment complex. She explained that she bought the car and still owed $200 before the car could be registered in her name. She admitted she was on probation. A search of the residence where defendant was staying revealed defendant's purse on top of a bed which did not appear to have been slept in recently. The purse contained a baggie with a white

4

crystal substance in one lump which tested positive for amphetamines and a letter addressed to defendant's sister.  Next to the purse, officers found a makeup bag and a green pouch which contained a digital scale used for weighing narcotics.  Defendant stated that she was staying in the apartment along with Allen and Blackman.  The bedroom belonged to Blackman.

A lab report which confirmed the officer's preliminary test for controlled substances was admitted into evidence.  The net weight of the substance found was 2.71 grams, a usable amount.

Allen testified for the defense and claimed that he placed the bag with at least two grams of his methamphetamine in defendant's purse because he did not want to drive with it in the car.  He believed he would return and retrieve his drugs before defendant woke up.  The pipe in the car also belonged to him.  He denied ownership of the digital scale.  Allen admitted he used methamphetamine in the bathroom of the home he shared with defendant.

Defendant testified.  She claimed that she did not know that Allen had placed methamphetamine in her purse.  During her testimony, she admitted that she knew Allen and Blackman had smoked methamphetamine earlier in the day.  She also admitted knowing that Allen was a methamphetamine user and that she had been dating him for a month.  She claimed he had never used methamphetamine in front of her but she had seen him under its influence.

At the conclusion of the evidentiary portion of the hearing, the trial judge asked the parties when they wanted to return and argue the matter and then stated that defendant had "confessed to a violation of probation while she was testifying . . . a different one than that's alleged," that is, she was "associat[ing] with known users of narcotics," but that the court would "take the time to review and still consider what it is that the People are offering."  The court queried whether the parties had any thoughts "about how I'm not allowed to consider that" and said it "want[ed] to give [counsel] a heads-up so you

5

can research it or do whatever you need to do, but it seems to me that is [defendant's] main problem." Defense counsel argued that the petition did not allege what the court wanted to consider. The court responded, "It seems to me that anything that comes out during the testimony of a probation violation, if it violates a court order, the Court's entitled to consider that and evaluate that in terms of whether it is a violation of the Court's order." Defense counsel noted that defendant's probation had previously been reinstated and that defense counsel did not have modified terms and conditions which added the nonassociation condition.

Prior to the hearing at which the court planned to entertain argument, defense counsel filed a written objection to the court's finding defendant in violation of probation based on association with a known drug user which counsel did not believe was a current condition of defendant's probation. But in fact, the nonassociation condition was added after defendant's first violation of probation. After defendant admitted her second violation of probation, the court restored probation on the "original" terms and conditions. Defense counsel argued that this meant that only the terms and conditions imposed when she was first admitted to probation, which terms did not include the nonassociation condition, were again operative and not the modified terms and conditions after the second violation of probation hearing which included the nonassociation condition.

Defense counsel objected to the court considering the nonalleged violation based on defendant's constitutional due process rights, specifically, defendant's right to proper notice, citing *Mosley* as directly on point. Defense counsel argued that had proper notice been provided, she "would have questioned the witnesses differently [and] may have elected not to have [defendant] testify."

At the hearing at which the court heard argument, the prosecutor, having just received defense counsel's written objection, noted that he "had not intended to argue that [defendant's] probation be violated on [the nonassociation] condition anyway." The

6

court proceeded to address the point nonetheless, distinguishing *Mosley* and stating, "The difficulty or the difference in this case is there's no way in the world for the People to have provided notice to the defense of this particular violation. The violation surfaced when the defendant testified. And it is a term and condition of probation. [¶] And while I believe--it would be perfectly appropriate for me to do one of two things. Either to violate her on that term because she admitted to it on the stand--and *there is no due process issue*. [¶] I mean, to me, it's this. If the defendant got up on the stand and admitted she had committed a robbery, the defense's position would have to be that I couldn't violate her for that violation of probation because you didn't give her notice of the fact that she was going to make that admission. That's an impossible scenario. You can only give notice or due process to those things you're aware of. Or I could delay the proceedings if I was going to use that as the *sole* means of violating her probation, give the defense time to prepare a defense to that particular aspect of it and conclude the hearing at a later time. I think those would be appropriate procedures. [¶] My thought is it is somewhat moot. I will hear your arguments. I will give you focus in terms of my problem from the defense's perspective on the issue of the possession which is [Allen] has no credibility whatsoever, the boyfriend." (Italics added.) The court also determined that defendant had "some serious credibility issues" and the court did not "have any doubts at all that she was aware of those drugs." Noting that it "would be certainly a much more difficult case if it were a court trial," the court found defendant in violation of probation "on both grounds."

We begin with basic principles. "At any time during the probationary period of a person released on probation . . . the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of his or her probation . . . ." (Former Pen. Code, § 1203.2, subd. (a).) A trial court has "very broad discretion in determining whether a probationer has violated probation." (*People v. Rodriguez* (1990) 51 Cal.3d

7

437, 443 (*Rodriguez*); see also *People v. Covington* (2000) 82 Cal.App.4th 1263, 1267; *People v. Self* (1991) 233 Cal.App.3d 414, 417 (*Self*).) "Absent abuse of that discretion, an appellate court will not disturb the trial court's findings." (*Self*, at p. 417; see also *Rodriguez*, at p. 443.)

"*Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484] . . . established the minimal due process requirements in parole revocation proceedings. [Citation.] . . . *Gagnon v. Scarpelli* [(1973)] 411 U.S. 778 [36 L.Ed.2d 656] . . . extended the *Morrissey* due process guarantees to probationers. [Citation.] . . . [*People v.*] *Vickers* [(1972)] 8 Cal.3d [451,] 458 . . . held that the federal *Morrissey* due process guarantees apply to formal state probation revocation proceedings. Thus, as a matter of due process, a probationer facing a formal probation revocation hearing is entitled to (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; (5) a neutral and detached hearing body; (6) a written statement of the evidence relied on and the reasons for revoking probation. [Citations.]" (*Jones v. Superior Court* (2004) 115 Cal.App.4th 48, 61-62, fn. omitted (*Jones*); see also *Rodriguez*, *supra*, 51 Cal.3d at p. 441; *Black v. Romano* (1985) 471 U.S. 606, 611-612 [85 L.Ed.2d 636, 642-643].)

Thus, the trial court may not revoke probation if the defendant was not informed prior to the hearing of the alleged violations and given an opportunity to prepare for and defend against the allegations. In *Self*, this court found that the defendant's due process rights were violated when, based on facts arising only during the revocation hearing on the allegations that the defendant had failed to report regularly and to make restitution payments, the trial court granted the People's motion to amend the petition to add the allegation that the defendant violated the condition that she not possess a checking account. (*Self*, *supra*, 233 Cal.App.3d at pp. 416, 419.) Similarly, in *Mosley*, the

8

defendant's due process rights were violated when, based on facts arising only during a hearing on an alleged rape, the trial court revoked the defendant's probation for consuming alcohol. (*Mosley*, *supra*, 198 Cal.App.3d at pp. 1170-1174.)

Here, defendant was not notified prior to the hearing that her association with Allen was an alleged basis for revocation of probation. As defense counsel explained to the trial court, had counsel known this might have been a further basis for a finding that defendant violated her probation, she may not have called defendant to the stand to testify and may have questioned the other witnesses differently.

Defendant was entitled to notice and an opportunity to prepare for and defend against the allegation that she violated probation by associating with Allen. The trial court erred to the extent it found defendant violated the terms and conditions of her probation based on her association with a known drug user.

The properly alleged basis for revoking defendant's probation, defendant's possession of methamphetamine, is supported by sufficient evidence. We must therefore determine the effect of the court's error.

The Attorney General argues that the error, although of constitutional dimension, is harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) We agree.

The defendant's knowing association with those who used drugs was of little significance when compared to her possession of methamphetamine. Indeed, we take the court's comment during argument that "[m]y thought is it is somewhat moot" to refer to the admitted association with a known drug user and in turn to suggest that the basis for violating defendant's probation that we have here found constitutionally barred made little difference to the court in light of the evidence supporting the basis for violating defendant's probation alleged in the petition.

Moreover, defendant had been convicted of transportation of methamphetamine in 2010 and had admitted a 2008 conviction for possession of a controlled substance for

sale.  In 2010, she was placed on probation for a period of five years.  Within a month, she was found to be in violation of probation for possessing a controlled substance, possessing drug paraphernalia, giving a false name to a law enforcement officer and driving on a suspended license.  Her probation was reinstated.

Four months later, defendant was found once again to be in violation of her probation by possessing a controlled substance and giving a false name to a law enforcement officer.  Her probation was again reinstated.

Just eight months after that, she was found to be in violation of her probation once again in this proceeding for possessing methamphetamine.  This is a classic case of a defendant not getting the message by continued grants of probation, returning as she did each time to the criminal lifestyle she insisted on leading.

At sentencing in this matter, defendant's attorney asked whether the court would "consider anything less than doing the five years suspended."  The court replied:  "I can't.  In my research on it--I wouldn't.  I'll make the record clear.  *I would not anyway*.  But my research would indicate that I couldn't do it *even if I wanted to*.  It was time that was imposed in sentencing.  *The only alternative I have is to give her additional county time, and I certainly am not going to do that anymore.*  (Italics added.)

We are convinced beyond a reasonable doubt that the trial court would have ordered defendant's sentence executed even if it had not found as a ground for violation of defendant's probation her known association with a person using controlled substances.

## II

### *The "Five-Year" Sentence*

We note an error in the abstract of judgment.  On January 28, 2010, defendant, pleaded no contest to the charge of transportation of methamphetamine in violation of section 11379 and to the allegation that she had a prior conviction within the meaning of section 11370.2, subdivision (c) pursuant to an agreement that she would be sentenced to

the low term of two years for the section 11379 violation and three years for the prior conviction for an aggregate term of five years in state prison and be granted probation. The abstract of judgment here reflects that defendant was sentenced to the "upper term" of five years for a violation of section 11379, subdivision (a).

Section 11379, subdivision (a) carries an upper term of four years. While it is correct that the sentencing court purported to sentence defendant to the "upper term" of five years on the section 11379 conviction and the court that found her in violation of probation here, ordered execution of the sentence and imposed a five-year term, it was not solely for a violation of section 11379, subdivision (a) as reflected in the abstract of judgment but was instead two years for a violation of that section and a consecutive three years pursuant to section 11370.2, subdivision (c). The abstract of judgment must be corrected accordingly.

III

*Presentence Custody Credits*

As far as custody credits, there is no supplemental probation report in the record which sets forth defendant's actual time in custody. The trial court announced that it had a "note" which is not part of the record on appeal and stated that "[defendant] is still entitled to a total of 653 total days; 480 under the original sentence--well, 480 in sentence time excluding the *Johnson* waiver time and then she has a total of 87 on the current case." The trial court then awarded 86 conduct days for a total of 653 days of presentence custody credit. The court also stated, "Well, I'm *guessing* she has 720 total days of county time that she's done but she *Johnson*-waived 240 of them." (Italics added.) The abstract of judgment reflects "480 dys sent + 87 dys RAW" as actual days of custody and "86 dys" of conduct credit for a total of "653 dys" of presentence custody credit.

The People claim the court should have awarded defendant 538 days as presentence custody credits. And defendant claims defendant "served only 360 days"

11

when she entered her *Johnson* waiver "and there were an additional five days available" which she did not receive.

On this record, we cannot conclude that the trial court's or the parties' calculation of presentence custody credit is correct. The trial court is responsible for calculating the custody credits by "determin[ing] the date or dates of any admission to, and release from, custody prior to sentencing . . . ." (Pen. Code, § 2900.5, subd. (d).) We will remand the matter to the trial court for a correct calculation of the number of days to which defendant is entitled as presentence custody credits. A supplemental probation report reflecting the dates of actual custody might assist the court in its calculations.

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The matter will be remanded to the trial court to correct the abstract of judgment and to calculate the presentence custody credits. In all other respects, the judgment is affirmed.

      HULL      , Acting P. J.

We concur:

      ROBIE      , J.

      DUARTE      , J.