Filed 5/4/15  P. v. Cortez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>CARLOS CORTEZ,<br><br>     Defendant and Appellant. | G050144<br><br>(Super. Ct. No. R-02245)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Carlos Cortez appeals from an order revoking his Postrelease Community Supervision (PRCS) (Pen. Code, § 3450 et. seq.)[1] after he violated the terms of supervision by being arrested for repeatedly stealing liquor from grocery stores. Cortez contends the prosecutor violated the reciprocal discovery statutes and his constitutional rights by failing to provide defense counsel with copies of the surveillance videotape by which the stores' loss prevention personnel and police officers identified him as the offender. We find no error and affirm the order.

FACTS & PROCEDURE

In 2012, Cortez pleaded guilty to possession of a firearm by a felon (§ 29800, subd. (a)(l)), and was sentenced to prison for three years. In February 2014, he was released from prison to PRCS, on terms including that he not engage in any conduct prohibited by law.

A petition to revoke Cortez's PRCS was filed on March 25, 2014. The petition, and the probation report, both stated Cortez was arrested and charged with multiple counts of stealing liquor, worth a total of $2,336, from four different Albertson's stores in Irvine over the course of five days. The petition and probation report both stated, "Each [Albertson's] location had video surveillance of the offender taking the items, by which [Cortez] was identified." Additionally, the petition and probation report both stated "the [l]oss [p]revention[] personnel at the Albertson's locations worked together, in conjunction with [the Irvine Police Department], to use surveillance footage to positively identify [Cortez] as the main suspect." The petition and the probation report stated a police officer interviewed Cortez at his residence and during the interview, Cortez admitted he "had a problem with stealing." He also said the gray hoodie sweatshirt worn during commission of the crimes might be at a friend's house.

Cortez was arraigned on the PRCS revocation petition on March 26, 2014, and the hearing on the revocation proceeding took place on April 29, 2014. The surveillance

---

[1]         All further statutory references are to the Penal Code.

videotapes were not shown or introduced into evidence at the revocation hearing. The two prosecution witnesses—an Albertson's loss prevention employee and an Irvine police officer—testified to their identification of Cortez as the thief based on having viewed the surveillance videotapes. Both testified the recordings were still accessible to them on their computers. The police officer testified that when he interviewed Cortez about the liquor thefts, Cortez initially denied knowing about them but then told the officer he "had a problem." When the officer asked if it was a "drinking problem," Cortez replied it was a "stealing problem." The officer testified the liquor thief wore the same gray hoodie sweatshirt during each occurrence shown on the surveillance videotapes. The officer testified that when he mentioned this to Cortez, and asked where the gray hoodie sweatshirt was, Cortez replied it was in his room. When the officer could not find the sweatshirt in Cortez's room, Cortez said he left it at a friend's house.

Cortez objected to the witnesses' testimony identifying him as the liquor thief from the surveillance videotapes. He moved to strike their testimony arguing the prosecutor committed a discovery violation by not providing him with copies of the surveillance videotapes before the revocation hearing so he could cross-examine the prosecution witnesses. Cortez argued the prosecution violated reciprocal discovery rules and his due process rights. The prosecutor responded he had provided the defense with all reports and petitions he had, and the defense never requested the surveillance videotapes or requested a continuance of the revocation hearing to obtain them before the hearing. The trial court overruled Cortez's objections and found no disclosure violation. It found Cortez in violation of his PRCS and ordered him to serve 180 days in custody.

DISCUSSION

Cortez contends the prosecution failed to disclose the surveillance videotapes, which violated the prosecution's statutory discovery obligations (§ 1054 et seq.), and violated his right to due process and the rule of *Brady v. Maryland* (1963) 373 U.S. 83

3

(*Brady*).  Accordingly, Cortez contends the order revoking his PRCS should be reversed.  We reject his contentions.

The 2011 Realignment Act "shifted responsibility for housing and supervising certain felons from the state to the individual counties."  (*People v. Cruz* (2012) 207 Cal.App.4th 664, 671.)  Under the Realignment Act, a qualifying felon is subject to PRCS "for a period not exceeding three years immediately following release" (§ 3451, subd. (a)), subject to several conditions including, as relevant here, that the supervisee obey all laws during his or her period of supervision.  (§ 3453, subd. (b), § 3454, subds. (a)-(b).)

Violation of conditions of PRCS can result in intermediate sanctions (e.g., flash incarceration of up to 10 days (§ 3454)).  But under section 3455, subdivision (a), if "the supervising county agency" determines "intermediate sanctions . . . are not appropriate," it "shall petition the court pursuant to [s]ection 1203.2 to revoke, modify, or terminate [PRCS]."  An uncodified section of the legislation that added the reference to section 1203.2 declared, "[b]y amending . . . [s]ection 3455 . . . to apply to probation revocation procedures under [s]ection 1203.2 . . . , it is the intent of the Legislature that these amendments simultaneously incorporate the procedural due process protections held to apply to probation revocation procedures under *Morrissey v. Brewer* (1972) 408 U.S. 471 [(*Morrissey*)], and *People v. Vickers* (1972) 8 Cal.3d 451 [(*Vickers*)], and their progeny."  (Stats. 2012, ch. 43, § 2(b), p. 1965.)

Probation violations need only be established by a preponderance of the evidence.  (*People v. Jackson* (2005) 134 Cal.App.4th 929, 935; § 3455, subd. (c).)  We review the revocation of probation for abuse of discretion.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443, 445.)

To the extent Cortez's argument is premised on the Criminal Discovery Statute, section 1054 et seq., which requires reciprocal exchange of evidence in criminal cases, *Jones v. Superior Court* (2004) 115 Cal.App.4th 48, 62 (*Jones*), explained those statutes do not apply to probation revocation proceedings.  Probation revocation is not part

4

of a criminal prosecution and a probation revocation hearing is not a criminal trial. (*Morrissey, supra,* 408 U.S. at p. 480.) "[T]he reciprocal discovery obligations mandated by the Criminal Discovery Statute apply only in the context of a criminal 'trial.'" (*Jones, supra,* 115 Cal.App.4th at p. 59.) "'"[P]robation revocation hearings and criminal trials serve different public interests, and different concerns may shape the People's pursuit of revocation and conviction."' [Citations.]" (*Id.* at p. 60.) Cortez's argument the reasoning of *Jones* is limited to whether the *defense* must give reciprocal discovery in a probation revocation proceeding and does not impact the prosecution's statutory reciprocal discovery obligations is unavailing. The cases upon which he relies *People v. Gutierrez* (2013) 214 Cal.App.4th 343 (*Gutierrez*), and *Magallan v. Superior Court* (2011) 192 Cal.App.4th 1444 (*Magallan*), did not deal with the applicability of the Criminal Discovery Statute to a *postconviction* probation revocation hearing, but with its applicability to *pretrial* proceedings (*Gutierrez, supra,* 214 Cal.App.4th 343 [preliminary hearing]; *Magallan, supra,* 192 Cal.App.4th 1444 [pretrial motion for discovery in support of suppression motion].) And there is nothing in the Criminal Discovery Statutes that distinguishes between the reciprocal discovery obligations of the defense *and* the prosecution.

Although the Criminal Discovery Statute does not "require reciprocal disclosure of discovery in connection with a probation revocation hearing" (*Jones, supra,* 115 Cal.App.4th at p. 61), a probationer nonetheless has due process rights. Cortez largely argues the prosecution's failure to provide him with copies of the surveillance videotapes upon which its witnesses relied violates the rule of *Brady*, *supra*, 373 U.S. at pages 86-88, in which the United States Supreme Court held due process requires prosecutors to disclose material *exculpatory* evidence to a criminal defendant before trial. But the United States Supreme Court has made clear *Brady* does not apply to compel disclosure in *postconviction* proceedings. (*District Attorney's Office v. Osborne* (2009) 557 U.S. 52, 68-70 (*Osborne*).) Instead, when courts analyze the fairness of *postconviction* proceedings, they consider

whether the procedures employed offend traditional principles of fundamental fairness. (*Id*. at p. 70.)

In examining the fairness of probation revocation proceedings, we are mindful "the full panoply of rights due a defendant in [a criminal] proceeding does not apply." (*Morrissey, supra,* 408 U.S. at p. 480.) "'In placing a criminal on probation, an act of clemency and grace [citation], the state takes a risk that the probationer may commit additional antisocial acts,' and 'the state has a great interest in being able to imprison the probationer [for probation violations] without the burden of a new adversary criminal trial. [Citation.]' [Citation.] The standard of proof in probation revocation proceedings is proof by a preponderance of the evidence. [Citation.]" (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 72.) Moreover, there is also no right to a jury trial on a probation revocation, and the rules of evidence are relaxed and the exclusionary rule does not apply. (*Jones*, *supra*, 115 Cal.App.4th at pp. 60-61.)

Due process requires a defendant facing a probation revocation hearing is entitled to written notice of the claimed violations, disclosure of the evidence against him, the opportunity to be heard and to present evidence, the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation), a neutral and detached fact finder, and a written statement of the evidence relied on and the reasons for revoking probation. (*Morrissey, supra,* 408 U.S. at p. 489; *Vickers, supra,* 8 Cal.3d at pp. 457-459.) Although a probationer has the right to the evidence to be used against him in a revocation hearing and the prosecution is required to maintain and produce it (*People v. Moore* (1983) 34 Cal.3d 215, 218-221), there is no general right to prehearing disclosure of exculpatory evidence and in accordance with *Osborne*, *supra*, 557 U.S. 52, our inquiry is whether the procedures offend traditional principles of fundamental fairness.

Cortez's due process rights were not violated. Cortez had written notice of the claimed violation and of the evidence against him that he now claims was not disclosed.

The petition and the probation report both specifically referred to the existence of surveillance videotapes, stating that each store where a theft was committed "had video surveillance of the offender taking the items, by which [Cortez] was identified[,]" and that Albertson's loss prevention personnel "worked together, in conjunction with [the Irvine Police Department], to use surveillance footage to positively identify [Cortez] as the main suspect." The existence of the surveillance videotapes was known to Cortez via the petition and the probation report, and nothing in the record demonstrates the defense requested the tapes, or that the prosecution suppressed or concealed them. (*People v. Morrison* (2004) 34 Cal.4th 698, 715 [no *Brady* claim of prosecutorial suppression of evidence "'when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the [trial c]ourt is his lack of reasonable diligence.'"].)

Moreover, although the trial court agreed the testimony regarding the identification of Cortez from the surveillance video tapes was important, it also observed the other evidence was not without weight in its decision. In a probation revocation proceeding, "'The judge is not determining whether the defendant is guilty or innocent of a crime. Rather, he [or she] must determine whether the convicted offender "can be safely allowed to return to and remain in society."'" (*In re Coughlin* (1976) 16 Cal.3d 52, 57 (*Coughlin*).) As a result, "evidence which is insufficient or inadmissible to prove guilt at trial nevertheless may be considered in determining whether probation should be revoked." (*Id.* at p. 58.) Likewise, the court assessing a probation revocation can even consider evidence seized illegally. (*People v. Hayko* (1970) 7 Cal.App.3d 604, 609-611.)

In a probation revocation proceeding, the trial court need only have "reason to believe" the defendant violated probation. (§ 1203.2, subd. (a).) This is because "'[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special . . . restrictions.'" (*People v. Rodriguez* (1990) 51 Cal.3d 437, 442.) "'The

court . . . need not wait until the defendant proves, by new acts of criminality, that the hope and expectation were unfounded.  Acts short of criminality, or evidence which leaves a criminal violation still uncertain, may well, in the judgment of the court . . . indicate that the hoped for rehabilitation is on the road to complete failure and that a more restrictive process is required both to protect society and to assist the defendant toward ultimate rehabilitation.'"  (*Coughlin*, *supra*, 16 Cal.3d at pp. 59-60, italics omitted.)  Here, when interviewed by police about the multiple thefts, Cortez initially denied involvement but then admitted he "had a problem with stealing."  When told the culprit wore the same gray hoodie sweatshirt in each theft, Cortez said the gray sweatshirt could be found in his room, and when it could not be located, said he left it at a friend's house.  Cortez's admissions were sufficient to support the court's conclusion he violated the conditions of his PRCS.

DISPOSITION

The order is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

8